therefore I cannot continue the injunction. I have already said that if the plaintiffs are entitled to damages the continuance of the injunction is not necessary to the protection of their right in reference to that relief.

I am aware it is not usual, nor, ordinarily, is it proper, to inquire into the right of the court to grant relief, upon an application for an injunction; still less to refuse an injunction when the question of jurisdiction is doubtful and when refusing it may produce injury to the party applying. But the code requires, as prerequisites to the injunction, that it shall appear by the complaint that the party is entitled to the relief demanded. This involves the question of the power of the court to grant relief in the case; and as I have no doubt but that the court, as a court of equity, has not power to grant the relief demanded in this case, I must deny the plaintiffs' motion for a continuance of the injunction.

The motion of the defendants is also denied, without costs to either party.

[NEW YORK SPECIAL TERM, May 7, 1860. *Mullin*, Justice.]

———•◆•———

## BALLARD & HENDERSON *vs.* FULLER.

Where the defendant obtained $3300 from the plaintiffs, upon three checks drawn by him, two of which were upon a bank at Rahway, N. J., and the other upon a bank in the city of New York, representing, at the time, that the two former checks were good, and that he was authorized to draw for $40,000; that he had the money in bank, and that he was good for the amount of those checks, himself; and it appeared, upon a motion to discharge an order of arrest, that two days before the defendant obtained the money on the checks, his notes, to the amount of $6000, were protested, and that attachments were soon after issued thereon, and the notes still remained unpaid; that he was insolvent at the time, and knew it; that he had no funds in the bank at R.; and had only been *allowed* to overdraw his account, and the bank declined to honor the checks; that he made other cotemporaneous attempts to obtain goods on credit, from other persons, upon like representations; and that he failed, two days after obtaining the money on the checks; the defendant not positively alleging, on the motion, that he believed himself to be solvent when he obtained the money; *Held* that a

Ballard *v.* Fuller.

*prima facie* case of fraudulent intent was established, in respect to all the
checks ; and the order refusing to discharge the order of arrest was affirmed.
On a motion to vacate an order of arrest, evidence of other concurrent frauds,
committed by the defendant, is admissible, as proof of his intent in com-
mitting the particular fraud charged.

APPEAL from an order made at a special term, denying a
motion to vacate an order of arrest.

*H. Sheldon,* for the plaintiffs.

*G. Dean* and *Charles E. Whitehead,* for the defendant.

*By the Court,* LEONARD, J. The action is for the recovery
of $3300, on three checks, two of which are drawn upon a
bank at Rahway, N. J. and the other upon a bank in the
city of New York; the latter check being post dated one day.
The checks were all negotiated in this city. The affidavit, on
which the order of arrest was granted, shows that the checks
on the bank at Rahway were drawn by the defendant without
any funds to meet them, although he represented that they
were good, and that he was authorized to draw for $40,000.
The affidavit also states that the defendant failed two days
afterwards, and avowed himself unable to pay the checks ; and
that the debt was fraudulently contracted.

The defendant denies that he made this representation at the
time he obtained the money ; states that he was *authorized* to
overdraw on the bank at Rahway to the amount of $15,000,
which sum he had secured to the bank by a mortgage previously
executed to secure discounts and overdrafts ; that his line of
accommodation at this bank, under the said arrangement, in-
cluding the two checks, was not full ; that he believed, when
he obtained the money from the plaintiffs, that he could go
on in business and pay his debts ; that he realized the impos-
sibility of doing so upon learning that a creditor was about
prosecuting an attachment against his property, as a non-res-
ident debtor. The defendant also introduces the affidavit of

the president of the bank at Rahway, who says the defendant was *allowed* to overdraw his account; that on the 21st of June, which was the day before his failure became public, and the same day that the defendant obtained part of the money from the plaintiffs, the bank learned that the defendant was embarrassed in business, and declined to honor the checks in suit.

In reply, the plaintiff Henderson, who made the first affidavit on which the order of arrest was granted, reiterated his former statement; and he is further sustained by Mr. Maurice, who states that he was present when the defendant obtained the money on these checks, and heard him represent to the plaintiff Henderson, that he had the money in the bank at Rahway, and that the checks were good; also that he, the defendant, *was good for the amount of the checks*, himself.

The plaintiffs also showed, by affidavit, that two days before the defendant obtained the money on the checks, his notes, to the amount of $6000, had been protested, and still remained unpaid; that the defendant was insolvent at the time he obtained the plaintiffs' money, and unable to pay his debts, and that he well knew it.

The plaintiffs also read affidavits showing other cotemporaneous attempts by the defendant to obtain large amounts of goods on credit from other parties, upon like representations of his responsibility.

The defendant objected, at the hearing of the motion at special term, to the reading of any affidavits showing other grounds of arrest than those contained in the affidavit upon which the order of arrest was founded.

. The defendant also insists that no facts establishing fraud were alleged in the affidavit upon which the arrest was granted, in respect to the check on the bank in this city, and that this check, as to which no fraud is shown, being embraced in the action, the order of arrest must be vacated.

There were some other statements contained in the affidavits, read on behalf of the plaintiffs to resist the motion, to

which I have not adverted, as they came within the defendant's first objection, or were irrelevant or inadmissible as grounds for sustaining this arrest.

I do not think the decision of Justice Allen, reported in 12 *How. Pr. Rep.* 197, is an authority in point for excluding any of the foregoing facts which were before the court at special term, in answer to the defendant's motion. Evidence of other concurrent frauds has long been admitted by the courts, as proof of the intent in committing the particular fraud charged; and this practice has been sanctioned by a recent decision of the court of appeals. (18 *N. Y. Rep.* 588.)

Two grounds for the arrest are disclosed in the affidavit on which it was granted, viz. 1st. The defendant's representations, affecting the two checks on the Rahway Bank. 2d. The failure of the defendant occurring in two days after obtaining the money, and his avowed inability to pay the plaintiffs' demands, showing a probable intent to defraud the plaintiffs, and affecting the whole transaction upon the three checks; and in connection with the fact that the defendant had no funds to meet the checks upon the Rahway Bank, establishing a *prima facie* case of fraud in obtaining the money on the check, drawn upon the bank in this city.

It is satisfactorily established that the defendant represented the checks on the Rahway Bank to be good, and that he had the funds in bank to meet them. The weight of evidence sustains the allegation that this representation was in fact made, at the time the money was obtained.

The alleged authority to overdraw his account does not excuse the defendant. From the statement of the president of the bank there appears not to have been an authority to overdraw, but a *permission*, only, which the bank had a right to withdraw at pleasure, and which was in fact withdrawn at a time when the full amount of the contemplated accommodation had not been used. It was not an agreement which the defendant could enforce against the bank, and is not a right which he can assign to the plaintiffs or to his general

assignee, or upon which he could maintain an action for damages, so far as is shown by the affidavits. It in no manner warranted the defendant in making the statement to the plaintiffs that the checks were good, or that he had funds to meet them, upon which they parted with their money.

The defendant's conduct becomes more inexcusable when we advert to the fact that $6000 of his paper was under protest, at the moment when he obtained the money on these checks, and represented himself to be good. The concealment of such a fact is strong evidence of a fraudulent intent; but when accompanied by an assertion that he was pecuniarily good, followed by attachments on these very demands under protest, (as I infer from the defendant's statement of his reason for abandoning the intention of going on with his business so soon after obtaining the plaintiffs' money,) I think there can be no doubt of his fraudulent intent in respect to the check on the bank in this city, as well as the two other checks.

The fact of the protested paper was germain to the original charge that the defendant had become publicly insolvent two days after obtaining the money on the three checks in suit. It was not a charge of a new fraud, but was corroborating evidence of the fraudulent intent already charged. It was evidently known to the defendant; for he discloses that he was threatened with attachments. He should have adverted to the fact, and explained it, if it was capable of an explanation consistent with a fair intent in relation to the question to be considered on the motion. He should have anticipated the disclosure, at the hearing, of so important a fact, and have been prepared to meet it in advance.

It is also to be observed that the defendant nowhere alleges that he believed himself to be solvent when he obtained the money, except in the modified manner that he expected to go on in business and believed that he would be able to do so, and that he did not expect to fail when he did. He discloses facts that warranted the belief that he knew he was insolvent, but was resolved to go on, without a public failure, and pay

as long as he could. He in fact pursued this course until his creditors were about procuring attachments against him as a non-resident debtor, when the impossibility of satisfying these creditors compelled him publicly to acknowledge his insolvency.

The order appealed from must be affirmed with $10 costs of the appeal, to the plaintiffs.

[NEW YORK GENERAL TERM, May 7, 1860. *Sutherland, Bonney* and *Leonard,* Justices.]