## T. D. FLIPPIN and others *vs.* RUDOLPH KNAFFLE.

## April Term, 1875.

:INJUNCTION—GROUND OF APPLICATION—DISCRETION OF JUDGE.—Upon the
preliminary application for an injunction, all that the judge should, as a
general rule, require is a case of probable right, and probable danger to that
right without the interposition of the court, and his discretion should then
be regulated by the balance of inconvenience or injury to the one party or
the other.

:·SAME—CASE IN JUDGMENT.—Thus, where the complainants sought to enjoin
a judgment at law upon the ground that the note on which it was recovered
had been given in consideration of the sale to them, by the defendant, of the
right to manufacture a particular medicine, composed of certain ingredients
in certain proportions, and that they had been induced to buy the right by
the false representation of the vendor that he was the discoverer of the
active agent in the compound, and alleged that the defendant was insolvent,
the Chancellor, although of opinion that the complainants were not injured
by the representation complained of, if false, yet granted the injunction
because of the irreparable loss which might follow the collection of the
.judgment before the point could be adjudged.

*Alex'r A. Hall* and *R. McP. Smith*, for complainants.
*D. F. Wilkin*, for defendant.

THE CHANCELLOR:—The bill states that, on the 5th of
·July, 1872, the defendant sold and conveyed to the com-

plainant Flippin " the secret of a remedy for chills and fever." The defendant's conveyance, made part of the bill, is of " all my right, title, and interest in and to the right to manufacture a certain medicine for the cure of chills and fever, known as Dr. Knaffle's chill pills, which I have discovered, manufactured, and used, composed of the following component parts : Take extract of common corn-fodder, 60 grains ; quiniæ sulphatis, 68 grains ; sulphuric acid and distilled water, each, 18 drops ; pulv. liquoritiæ, 30 grains ; make into 36 pills.''

The conveyance authorized the purchaser, at his own expense, to prosecute caveats and other proceedings necessary to secure letters patent from the government for the exclusive manufacture and sale of said medicine, and to this end to use the grantor's name. It contained various covenants not necessary to be mentioned, because it is not claimed that there has been any breach.

The bill is filed to enjoin the collection of two judgments recovered by the defendant against the complainants, upon notes given for the consideration of the above sale and conveyance. It does not claim that the written instrument fails to embody the actual contract between the parties, or that the defendant has violated its terms. There is no averment that the defendant misrepresented the merits of the medicine, or that the pills are less efficacious than expected. But the gravamen of the bill is that the active agent of the compound was the extract of corn-fodder, and that the defendant, as an inducement to the purchaser to make the contract, falsely represented that he was the discoverer of the extract of fodder, when in fact he was not, the extract having been used for similar purposes for many years in this and other states.

Conceding that the extract is the active ingredient—a concession scarcely admissible in view of the fact that the compound contains a larger proportion of sulphate of quinine—and conceding further that there was a false representation that the vendor was the discoverer, the question

would be whether the misrepresentation is sufficient to justify a rescission. It is the compound composing the pill which was bought, and, if this compound is what it was represented to be, it is difficult to see how the purchaser has been injured by the fact that the most active ingredient is an old, instead of a new, discovery.

In order to constitute a fraud by misrepresentation there must be a representation false within the knowledge of the party making it, reasonably relied on by the other party, and constituting a material inducement to the contract. Adams' Eq. 177. There must be damage to the party deceived, even where there is knowingly false representation, before a right of action can arise. Benj. on Sales, § 429. "Fraud without damage, or damage without fraud, gives no cause of action." *Per* Cooke, J., 3 Bulst. 95. Misrepresentation of a collateral fact will not avoid a contract, though fraudulent. *Percy* v. *Huddleston*, 3 Yerg. 38. Fraud, to be relieved against, must be operative and injurious to the party seeking relief. *Cunningham* v. *Shields*, 4 Hayw. 44; *Cunningham* v. *E. & Ky. R.*, 2 Head, 29; *Whitson* v. *Gray*, 3 Head, 441; *Union Bank* v. *Osborne*, 4 Humph. 413.

It is obvious, therefore, that, to entitle the purchaser to a rescission in this case, he must show that he has been injured by the false representation complained of. Looking simply to the contract as embodied in the conveyance, and the alleged representation, the latter is obviously a collateral fact, not a part of the trade, and *prima facie* of no consequence to the purchaser. For, whether the extract be an old or new discovery, he is entitled to use it as an ingredient in the compound, and if the ingredients be kept secret, as is specially stipulated, the purchaser gets the full benefit of his bargain.

The bill, however, undertakes to point out in what way the purchaser is damaged by the fact that the extract was already in use, and not a new discovery. It says that the inducement to buy was the fact that the extract was not

known, and the purchaser would have the exclusive use of it. But it is not true that the purchaser was to have the exclusive use of the extract, except in the specific combination composing the pills. There is nothing in the contract which prevents the vendor, or any other person, from using the extract alone, or in any other combination than the one sold. It is not stipulated that the purchaser may obtain a patent for the extract alone. It is for the compound that he is authorized to use the grantor's name in order to procure letters patent. The bill further states that to manufacture the extract on a large scale would require the employ-ment of persons to boil the fodder, which would peril the secret. But such employment would equally peril the secret if it were a recent discovery, for they did not buy either the right to exclusive use or to patent the extract. So, when it is said that the filing of a caveat would only publish the secret, without protecting the purchaser, it is obvious that this result would equally follow, whether the discovery of the extract were recent or old.

I am unable to see, therefore, that the representation complained of, whether true or false, has been of the least injury to the purchaser of the compound.

I lay no stress upon the character of the receipt in controversy, although we have the weighty authority of Lord Chancellor Nottingham against equity taking cognizance of such chemical mixtures. " I will not," says the great judge, " so far countenance these kind of receipts, which is only a piece of quackery, and serves only to cheat the people, as to put a value on them in chancery. For aught I know, a receipt to make mince pies or catch rats may be as valuable." ·*Jenks* v. *Holford,* 1 Vern. 63.

The bill is before me only upon an application for a preliminary injunction, to enjoin the collection of the judgments recovered for the purchase money of the medical compound until further hearing, and avers that the defendant is insolvent, and, if permitted to collect the money, the loss will be irreparable. The question presented, then, is whether

16

I should, upon what seems to me the want of equity on the face of the bill, refuse the application; or, in view of the irreparable loss to the complainants by the refusal, and the chance of error in my conclusion upon the merits of the case as made, grant the application. On principle it would seem that the action of the judge should, in such a case, be swayed by the fact that the injury to the one side, arising from the refusal, is certain, while the damage to the other, by the issuance of the injunction, is inconsiderable, if any. For our statute provides that the applicants, in order to entitle themselves to the benefit of the writ, shall give bond, with good security, in double the amount of the judgments, conditioned to pay the amount of the judgments, with interest and costs, or to perform the decree of the court in case the injunction is dissolved, and also to pay such damages as may be sustained by the wrongful suing out of the injunction. Code, § 4439.

In *Glascott* v. *Lang*, 3 Myl. & Cr. 455, Lord Cottenham says: "In looking through the pleadings and evidence for the purpose of an injunction, it is not necessary that the court should find a case which would entitle the plaintiffs to relief at all events. It is quite sufficient if the court finds, upon the pleadings and upon the evidence, a case which makes the transaction a proper subject of investigation in a court of equity." In the *Great Western R. Co.* v. *Birmingham, etc., R. Co.*, 2 Ph. 602, the same learned judge says: "It is certain that the court will in many cases interfere and preserve property in *statu quo* during the pendency of a suit in which the rights to it are to be decided, and *that* without expressing, and often without having the means of forming, any opinion as to such rights. * * * It is true that the court will not so interfere if it thinks that there is no real question between the parties; but, seeing that there is a substantial question to be decided, it will preserve the property until such question can be regularly disposed of. In order to support an injunction for such purpose it is not necessary for the court to decide upon the merits in favor

of the plaintiffs." In *Shrewsbury & Chester* v. *Shrewsbury & B. R. Co.*, 1 Sim. N. S. 410, 426, the Vice-Chancellor reviews these rulings of Lord Cottenham, and, in view of some suggestions by Lord Eldon on the same subject, concludes " that there are two points on which the court must satisfy itself. First, it must satisfy itself, not that the plaintiff has certainly a right, but that he has a fair question to raise as to the existence of such a right. The other is whether *interim* interference, on a balance of convenience or inconvenience to the one party and to the other, is or is not expedient." And see *Tonson* v. *Walkers*, 3 Swans. 679.

To the same effect are the American authorities. " It is not usual, nor ordinarily is it proper, to enquire into the right of the court to grant relief upon an application for an injunction, still less to refuse an injunction when the question of jurisdiction is doubtful, and when refusing it may produce injury to the party applying." *Ballard* v. *Fuller*, 32 Barb. 68. This practice has been changed in New York by statute directing an injunction to be granted only when it shall appear by the complaint that the party is entitled to the relief demanded. *Hartt* v. *Harvey*, 32 Barb. 55. " In order to support a motion for an injunction the bill should set forth a case of probable right, and a probable danger that the right would be defeated without the special interposition of the court." *Per* Johnson, J., in *Georgia* v. *Brailsford*, 2 Dall. 402. Blair, J., says in the same case: " It is enough, on a motion of this kind, to show a colorable title." Id. 407.

The practice in this state has always been to grant injunctions upon the *ex parte* statement, under oath, of the applicant, showing probable cause and probable danger. *Haynes* v. *Hazlerigg*, 1 Tenn. 342 ; *Rutherford* v. *Metcalf*, 5 Hayw. 58, 65. And by statute the power to grant injunctions is entrusted to all of our Chancellors, circuit and special judges, interchangeably. Code, §§ 3946, 4434. There is no statutory provision controlling the exercise of the discretionary

powers thus entrusted to all of our judges. But the discretion is a legal discretion controlled by well-settled rules (*M. & M. R. Co.* v. *Huggins*, 7 Coldw. 226), and is subject to the supervising control of the Chancellor of the court in which the suit is pending. Code, §§ 4436, 4451.

All, it seems to me, that the judge should require, upon the preliminary application, is a case of probable right, and probable danger to that right without the interposition of the court, and then his discretion should be regulated by the balance of inconvenience or injury to one party or the other. Acting upon these views, the injunction will be granted in the present instance upon the terms imposed by the Code.