THE WESTERN UNION TELEGRAPH COMPANY *v.* THE ST. JOSEPH & WESTERN RAILWAY COMPANY and others.

*(Circuit Court, D. Kansas.   July 31, 1880.)*

1. ILLEGAL CONTRACT—REMEDY—INJUNCTION.—A court of equity will enjoin the seizure of property and the ejectment of the possessor, although the same may have been acquired under an illegal contract, until an application has been made for the cancellation of such contract, and a full and fair settlement of all accounts growing out of its execution in the past.

2. CORPORATION—RATIFICATION.—A corporation, like an individual, may ratify by its acts the terms of a contract by which it would not, without such ratification, be bound.

3. CONTRACT—SPECIFIC PERFORMANCE—INJUNCTION.—Although specific performance of a contract requiring the performance of continuous duties will not be enforced, a court of equity will, nevertheless, enjoin its violation.

In Equity.   Demurrer to Bill.

*Woodson & Crosby, W. C. Webb, Peck, Ryan & Johnson, Karnes & Ess, Williams & Thompson* and *C. Beckwith,* for complainant.

*John Doniphan* and *Everest & Waggener* for defendants.

McCRARY, C. J.   This case has been argued and submitted upon demurrer to the bill.   The material facts, as they are stated in the bill, are as follows.

1. On the tenth day of August, 1871, the Western Union Telegraph Company, and the St. Joseph & Denver City Railroad Company, entered into a written contract, whereby, upon certain terms and conditions, a line of telegraph was to be constructed, maintained, and operated along the line of said railroad.   Each company was to contribute, as specified in the contract, certain material and service in the construction, maintenance, and operation of the line.

2. The railroad company agreed to give the telegraph company the exclusive right of way, on and along the line of the road, for the construction and use of a telegraph line for public and commercial business.

3. Provisions were made for transacting the telegraph business of the railroad company by the telegraph company.

4. The agreement was to continue in force for the term of twenty-five years from the tenth of August, 1871.

5. In pursuance of the contract, and in full reliance upon its legality, and the good faith of the railroad company in making it, the plaintiff has erected and maintained, at great cost and expense, a line of telegraph along the line of the railroad, consisting of two wires, one extending from Elwood, in Kansas, and St. Joseph, Missouri, to Hastings, Nebraska, and the other from the same points to Hanover, in Kansas.

6. The said railroad company constructed its railroad from a point opposite the city of St. Joseph, Missouri, although the charter was for a railroad from Elwood, Kansas, westwardly to a junction with the Union Pacific Railroad, or any branch thereof, and it was expressly understood and agreed between plaintiff and said railroad company, at the time the contract was entered into, that the plaintiff was to operate, maintain, and establish its telegraph along the line of the railroad, from St. Joseph, through Elwood, Kansas, and the line was so erected, and has been so maintained and operated.

7. Certain mortgages executed by the said St. Joseph & Denver City Railroad Company were duly foreclosed, and under decree of foreclosure thereof all the land, property, rights, and franchises of said company were duly sold and conveyed to persons representing the holders and owners of the mortgage debts. In 1875 the purchasers, and those for whose benefit they purchased, took possession of the entire line from St. Joseph to Hastings. Afterwards the St. Joseph & Western Railroad Company was organized, and all the property, rights, and franchises of the old company were sold and conveyed to it.

8. Since the purchase by said last-named company (defendant herein) it has been using and operating the railroad, and has fully ratified, sanctioned, and confirmed the contract made and entered into between the plaintiff and St. Joseph & Denver City Railroad Company, and received and enjoyed all the benefits and advantages of said contract that had been received and enjoyed by the St. Joseph & Denver City Railroad Company down to the time the new corporation, now owning and controlling the same, was formed.

9. The defendants have combined and confederated together for the purpose of defrauding the plaintiff of said line of telegraph, and of the property and wires connected therewith, and did, about the twenty-seventh of February, 1880, unlawfully and with force seize the telegraph line at a point in Doniphan county, Kansas, etc., and did forcibly deprive plaintiff of all possession, in benefit and control, of said telegraph wires and batteries, etc.

The prayer is for an injunction to restrain defendants from preventing plaintiff reconnecting the wires that have been cut and severed as aforesaid, and restoring the connection which has been severed, and from preventing the plaintiff from using the said line and wires, and enjoying all the benefits to which plaintiff is entitled under said contract of August 10, 1871, and from interfering with plaintiff in the use of said telegraph and wires, and from the exercise of rights heretofore claimed and exercised under said contract.

Prior to the removal of this cause from the state court an injunction was granted. The defendants demur, and also move to dissolve the injunction. It will be sufficient, for the present, to consider the case upon the demurrer.

1. It is said that the charter of the St. Joseph & Denver City Railroad Company expired by law in 1877, and, inasmuch as the contract was to run for twenty-five years, or until 1896, it was beyond the power of the corporation, and void. It is not necessary to determine the question whether such a contract is void *in toto*, or only void as to that part of the contract which, by its terms, is to be performed after the expiration of the charter, because, in so far as it has been

executed, the parties are bound, and rights may have accrued that a court of equity will enforce. The contract was entered into; it is not tainted with moral turpitude; under it a line of telegraph has been built and operated, and a valuable business has been created; for about nine years it has been recognized and executed. Under these circumstances it is not the province of either party to declare the contract void, and assume, without process and without a settlement, to seize the lines and property.

2. It is insisted that by the foreclosure sale of 1875, to the new company, they acquired all the rights the old company had in the wires along the line; that the new company took them freed from any claim of plaintiff under the contract, and is not bound by it. This claim is fully met by the allegations in the bill, which is admitted by the demurrer, that the new company, since its purchase, has fully ratified, sanctioned, and confirmed the contract, "and that it has received all the benefits and advantages of said contract that had been received and enjoyed" by the old company. If this allegation is true, it must follow that the new company is at least so far bound by the terms of the contract as to be obliged to submit to an accounting and settlement with the plaintiff before it can take possession of the wires and eject the plaintiff therefrom. A corporation, like an individual, may ratify, by its acts, the terms of a contract by which it would not without such ratification be bound.

3. It is also insisted that the plaintiff is not entitled to relief, because of the clause in the contract which gives the plaintiff the exclusive privilege of constructing and operating a line of telegraph along the line of the railroad.

I have little doubt that the clause here referred to is void; and should any telegraph company desire to erect another line along the railroad, I do not think the plaintiff could be heard to object. *Western Union Telegraph Company* v. *American Union Telegraph Company*, Supreme Court of Georgia, 1880.

But that clause does not vitiate the entire contract, as between the parties; much less does it preclude the plaintiff from seeking the aid of a court of equity to protect rights
v.3,no.8—28

acquired under it, and growing out of its execution in the past.

4. It is said that the contract requires the performance of continuous duties, and therefore specific performance will not be decreed. This is true, but a court of equity may, nevertheless, enjoin the violation. Pomeroy on Specific Performance, §§ 24, 25, 310, 311, and 312.

5. I am not prepared at present to decide that the defendants may not be able to show that the contract in question ought to be cancelled by decree of this court; that is a question which can only be determined upon final hearing. In cases of this character, when the contract requires continuous service for a series of years, and where the parties disagree, even if the contract is not absolutely void, a court of equity may decree a dissolution of relations between them, upon a free settlement of their accounts, and payment of any balances.

What I wish to emphasize in this case, as well as in other similar cases, is that the defendants have no right to take their remedy into their own hands. If they have the right to seize this property by force, upon the ground that they hold the contract void, according to the same reasoning the plaintiff would have the right to adjudge the contract valid, and by force retake the property. In other words, force and violence would take the place of law, and mobs would be substituted for the process of courts of justice. The strongest litigant, the one commanding the largest force of men and the most money, would succeed.

Such a doctrine, if recognized by the courts as a proper mode of adjusting disputes concerning property rights, would lead at once to anarchy.

If the defendants, after years of acquiescence in the contract in question, after receiving its benefits, and after a property had been built up under it to which others made claim, became suddenly convinced that it was a void contract, it was their duty to apply to the courts for relief, praying a cancellation of the contract, and a full and fair settlement of all accounts growing out of its execution in the past.

Until they seek some such remedy, and until a fair settlement upon full accounting can be had, they will be enjoined from attempting to eject the plaintiff, or to seize the property.

The demurrer to the bill is overruled.