BOARD OF MAYOR, ETC., OF CITY OF MORRISTOWN, TENN., v. EAST
TENNESSEE TELEPHONE CO.

(Circuit Court of Appeals, Sixth Circuit. April 8, 1902.)

No. 1,019.

1. MUNICIPAL CORPORATIONS—GRANT OF FRANCHISES IN STREETS—MODE OF
EXERCISING POWER.

Power conferred on a city by its charter to grant privileges and
franchises in the use of its streets "by ordinance" cannot be exercised
by a mere resolution, nor can an ordinance of the city making such a
grant be amended in respect to any of its terms or conditions by a reso-
lution.

2. SAME—ACCEPTANCE OF GRANT—VALIDITY AND EFFECT.

An ordinance passed by a city, under power given by its charter,
granting to a telephone company the right to erect and maintain its
poles and wires in the streets, on certain conditions, when accepted by
the company creates an irrevocable contract, unless the power to alter
or revoke it is reserved, and an acceptance of such an ordinance as
amended by a subsequent resolution created a valid and binding contract
as against the city, which it could not repeal by a subsequent ordinance,
although the resolution was in fact void and inoperative to change the
terms of the original grant, where the company took no steps to with-
draw its acceptance on that ground, but proceeded to avail itself of the
grant, even though while doing so it continued to insist on the validity
of the resolution as an amendment.

Appeal from the Circuit Court of the United States for the Eastern
District of Tennessee.

The East Tennessee Telephone Company is a corporation organized under
the law of Kentucky, which is engaged in the operation of telephone systems
in various towns of Tennessee. Prior to the controversy as to its right to
do a local business and conduct an exchange at Morristown, it seems to have
been conducting, in Morristown, a long-distance telephone station, by which
the town was connected with other towns in the vicinity in which it was
doing a local business. Prior to September, 1899, the local business and
exchange at Morristown was done by a local Tennessee corporation called
the Morristown Telephone Company. On September 1, 1899, the council of
Morristown passed an ordinance giving to the East Tennessee Telephone
Company the right to erect poles and string wires over the streets and
alleys of the city for the purpose of conducting a local telephone exchange.
This ordinance fixed the maximum rate of charges, and required that the
city should be given the free use of two telephones, and the right to use
the company's poles for stringing a fire alarm system. September 25, 1899,
a resolution was passed by the Morristown city council giving to the tele-
phone company the right to increase its maximum charges in respect to
one class of telephones. On the day following, the company, in writing, ac-
cepted the terms of the ordinance as thus amended. In pursuance of the
consent thus given, the company took some steps toward the enlargement of
its local facilities, and incurred some expense in preparing for further more
considerable extensions. There seems to have been some popular discontent
with the resolution allowing an increased charge for service under the action
of the city council last taken, which led to the repeal on November 17, 1899,
of the ordinance of September 1st. Pending the matters stated, the local
company seems to have been in the hands of a receiver appointed by the
circuit court of the United States upon a creditors' bill. Under this cred-
itors' proceeding the entire property and franchises of the Morristown Tele-
phone Company were brought to a judicial sale. At this sale the property
and franchises of the company were purchased by the East Tennessee

Telephone Company, and the sale confirmed and title vested February 28, 1900. From this time the last-named company claimed to exercise all the rights and franchises which pertained to the old Morristown Telephone Company as well as such rights and franchises as had been granted to it by virtue of the ordinance and resolution heretofore mentioned. The municipal authorities, upon the other hand, denied the validity of the ordinance under which the Morristown Telephone Company had been maintaining its poles and wires upon the streets, and denied the authority of the East Tennessee Telephone Company as a foreign corporation engaged in a competitive business to acquire the rights and franchises of the Morristown Telephone Company. The Morristown authorities also denied that the East Tennessee Telephone Company had acquired any street rights by virtue of the ordinance of September 1, 1899, or the resolution of September 15, 1899. In short, the position of the municipal authorities was that the East Tennessee Telephone Company had no authority from any source to erect or maintain a local telephone system by using the streets or alleys of the town for their posts and wires, and was therefore a trespasser upon the streets. Acting upon this line, the agents and officers of the East Tennessee Telephone Company were prevented by the municipal police from erecting poles or stringing wires for the purpose of prosecuting the business of a local telephone company. This interference is charged to have been destructive to the franchises claimed, and a remedy by injunction was therefore sought. Upon the pleadings and proof the court below granted a perpetual injunction as prayed. From this decree the municipality of Morristown has appealed, and assigned error.

W. N. Hickey and Robt. E. L. Mountcastle, for appellant.
Edward T. Sanford, for appellee.

Before LURTON and DAY, Circuit Judges, and WANTY, District Judge.

LURTON, Circuit Judge, after making the foregoing statement of the case, delivered the opinion of the court.

The power of the city of Morristown, prior to the amendment of its charter by the act of April 21, 1899, to grant any street rights to the Morristown Telephone Company, is denied, and an ordinance passed February 22, 1896, giving to that company the right to erect poles and string wires on the streets and alleys of the town, subject to certain limitations, is claimed to have been an ultra vires act. Morristown is incorporated under a special legislative charter passed November 21, 1867. Priv. Acts Tenn. 1867-68, p. 18. Curiously enough, that charter does not, in express terms, deal with the question of the grant of privileges or franchises in the streets. Neither does it, as is usually the case, provide in so many words that the corporation shall have general "control" over its streets and alleys. Upon this rests the case against the validity of the ordinance under which the Morristown Telephone Company erected its poles on the streets of the town, and for years conducted a local telephone business without let or hindrance from the municipal authorities.

That no telegraph or telephone company can lawfully occupy the streets or alleys of a town with their poles and wires without legislative authority granted directly by the legislature, or by the municipal authority in pursuance of power delegated, is a plain and obvious proposition. That the authority to consent to the use of the streets

115 F.—20

of a town by a railway, telegraph, or telephone company resides primarily in the legislature of the state is well settled also, though usually delegated to the municipality directly concerned. City of Knoxville v. Africa, 23 C. C. A. 252, 77 Fed. 501, 507. That the power to grant a right of way to street railways through the streets of a town, when its motive power is animal or electricity, may be implied from a grant of general control over the streets, we had occasion to decide in Detroit Citizens' St. Ry. Co. v. City of Detroit, 12 C. C. A. 365, 64 Fed. 628, 636, 26 L. R. A. 667. The court below held that while the charter of Morristown did not, in express terms, delegate to the municipality general control over its streets and alleys, the powers in reference to streets and alleys were so numerous and sweeping as to be equivalent to general control. We are not prepared to disagree with this conclusion, but find it unnecessary to determine the validity of the ordinance under which the Morristown Telephone Company established its poles and wires on the streets of the town.

By the Tennessee act of April 21, 1899, the charter of Morristown was so amended as to include within the powers which might be exercised by ordinance the power to grant privileges and franchises in the use of the streets. This act removed all doubt as to the power of the city, and after its enactment, and on September 1, 1899, an ordinance was duly passed giving to the East Tennessee Telephone Company the right to erect poles and string wires on the streets and alleys of the city, "in such a way and manner as not to obstruct the streets and alleys, and to erect their poles in such a way as to be the least inconvenient to the public travel, as may be agreed by the street committee." The ordinance prescribed the maximum charges to be made, and required the company to give to the city two telephones free of charge, and to allow their poles to be used for the purpose of stringing a fire-alarm system. On the 25th of September, following, the city, on application of the East Tennessee Telephone Company, amended this ordinance by a resolution increasing the maximum rate chargeable by the company for one class of telephone service. On September 26, 1899, the telephone company wrote and signed on the foot of this original resolution an acceptance in these words:

"In consideration of this resolution, together with an ordinance heretofore passed, we accept both as taken together as a contract between the East Tennessee Telephone Company and the city of Morristown."

For some unexplained reason, the city council at a meeting held October 6, 1899, passed a resolution reciting the above clause as having been "added" to the resolution without authority, and ordering that the minutes of the former meeting be corrected by striking out the clause of acceptance above quoted. November 17, 1899, the council formally repealed the ordinance of September 1, 1899, under the claim that the city had the right to repeal or withdraw its consent to the use of the streets, as provided by that ordinance, at any time before the ordinance had been legally accepted. The argument that the repeal occurred before acceptance is based upon two propositions: First, that the resolution of September 26th was a void thing,

because the ordinance of September 1st could not be altered or annulled by resolution; second, that the acceptance was of the ordinance and resolution together, and, the resolution being void, the acceptance goes for nothing.

The consent to the occupancy of the streets by the poles and wires of the telephone company for the purpose of maintaining a public telephone system was the grant of an easement in the streets and a conveyance of an estate or property interest, which, being in a large sense the exercise of a proprietary or contractual right rather than legislative, was irrevocable after acceptance, unless the power to alter or revoke was reserved. This principle has too many times been declared and applied by this court to require further elaboration. Detroit Citizens' St. Ry. Co. v. City of Detroit, 12 C. C. A. 365, 64 Fed. 628, 26 L. R. A. 667; Louisville Trust Co. v. City of Cincinnati, 22 C. C. A. 334, 76 Fed. 296; Iron Mountain R. Co. v. City of Memphis, 37 C. C. A. 416, 96 Fed. 113; Citizens' Ry. Co. v. Africa, 23 C. C. A. 252, 77 Fed. 501.

The telephone company in consideration of this street easement agreed to permit its poles to be used by the city for stretching the wires of a fire-alarm system, and also to furnish two telephones free for municipal uses. The amendment of this ordinance by the resolution of September 25th was ineffectual. The charter as amended having conferred the power of granting street franchises "by ordinance," no other method was admissible. When, by statute or charter, power is conferred upon a municipal council and is silent as to the mode of action, the decision may be by either ordinance or resolution, at discretion of the council. But when the charter prescribes that franchises can be granted by ordinance it is not competent to make such a grant by resolution. Board v. De Kay, 148 U. S. 591, 13 Sup. Ct. 706, 37 L. Ed. 573; Dill. Mun. Corp. (2d Ed.) § 244 et seq., and notes; Newman v. City of Emporia, 32 Kan. 456, 4 Pac. 815; Van Vorst v. Jersey City, 27 N. J. Law, 493; City of Green Bay v. Brauns, 50 Wis. 204, 6 N. W. 503; Illinois Trust & Sav. Bank v. Arkansas City, 22 C. C. A. 171, 76 Fed. 271, 34 L. R. A. 518.

The by-laws of the city required that an ordinance should be passed at two separate meetings. No such requirement exists as to the passing of a resolution. So far as the resolution sought to alter any term or condition upon which the ordinance granted an easement in the streets to the East Tennessee Telephone Company its invalidity must be conceded; for it would seem to follow that if a franchise can only be granted by an ordinance that such an ordinance can only be altered or amended, in respect to any of its terms or conditions, by another ordinance, and not by a mere resolution. This brings us to the crux of the case. The ordinance conferring the right to erect and maintain its poles and wires upon the streets was repealed by an ordinance passed November 17, 1899.

The learned counsel for the appellant concede that if there had been an "unequivocal acceptance of this consent ordinance, and substantial action under its terms, that it would have constituted an inviolable contract." City of Knoxville v. Africa, 23 C. C. A. 252, 77 Fed. 501;

Detroit Citizens' St. Ry. Co. v. City of Detroit, 12 C. C. A. 365, 64 Fed. 628, 26 L. R. A. 667.

The right to revoke the easement granted is based upon the fact that the telephone company, in writing, accepted the ordinance only as amended by the invalid resolution. This acceptance, it is said, was but a conditional acceptance, and that, if the resolution turn out to be ineffective as an amendment or alteration of the terms of the consent ordinance, the acceptance goes for nothing. The position is untenable. The telephone company, under the circumstances, might very well have said, upon discovery, that the modification of the terms of the ordinance had not been made in a valid manner, "that it would not avail itself of the franchise granted, and was not bound to carry out any implied agreement to construct or maintain a local telephone system, as its acceptance of the street franchise had been based upon the supposed validity of the resolution modifying the terms of the ordinance granting a street easement." But this it has not done, and does not now say. On the contrary, it in effect says: "Although I have not so good a contract as I desired and supposed I had, yet I stand upon the rights conceded me by the valid ordinance, and upon the terms and conditions there prescribed."

An ordinance conferring street easements in excess of the power of the municipality to grant is not necessarily void. For example, ordinances conferring exclusive rights by a municipality having no power to grant exclusive rights have been held valid so far as to convey a right, subject to the right of the city to grant like privileges in same streets to others. Levis v. City of Newton (C. C.) 75 Fed. 884; City of Waterloo v. Waterloo St. Ry. Co., 71 Iowa, 193, 32 N. W. 329.

The same rule would apply to an ordinance valid in part and invalid in part which is applicable to a statute. If the grants are so distinctly separable that each can stand alone, and the court is able to see that there is no such interdependence as to make the validity of a part depend upon the validity of every part, the ordinance will be upheld so far as valid. But here nothing has failed but an effort to amend an ordinance confessedly valid. The amendment was one proposed by the telephone company, and wholly in its interest. If it chooses to go on, although the modifying resolution has failed to accomplish its purpose, it is not for the city to escape responsibility upon the assumption that everything done by the telephone company in acceptance of the easements granted was made dependent upon the validity of this amending resolution. The plain purpose of the telephone company, by its written acceptance and by the subsequent prosecution of the work of putting in its local lines, was to avail itself of the grant made by the ordinance. Undoubtedly it acted upon the theory that the resolution had worked a valid modification of the ordinance, and this it has maintained to the end of this litigation. This contention it has now lost, and it is now confronted with the novel claim that the easement remained revocable, because its acceptance included a supposed modification which turns out to have been irregularly granted, and therefore invalid. The acceptance of the grant by writing and by acts prior to the repealing ordinance was, in our judgment, such as to give

the ordinance, so far as valid, effect as a contractual ordinance, and render it irrevocable.

Street rights so vested cannot be devested without the consent of both parties or by clear acts of abandonment indicating an intention not to accept. Louisville Trust Co. v. City of Cincinnati, 22 C. C. A. 334, 76 Fed. 296. The street rights thus granted are, of course, subject to the provisions of the ordinance itself, as well as the police power of the city, which can never be contracted away.

Whether the Morristown Telephone Company had any street easement, and whether the appellees, as purchasers of its property, acquired such street rights as it had, we do not decide. That it acquired the physical property of that company is not denied. What we do decide is that the East Tennessee Telephone Company acquired a valid and irrevocable right to erect its poles and string its wires on and over the streets and alleys of Morristown, under and subject to the terms and provisions of the ordinance of September 1, 1899. We also hold that the resolution of September 25, 1899, was ineffective as an amendment of the prior ordinance, and that the East Tennessee Telephone Company, by its acts and deeds, has accepted the terms of the ordinance of September 1, 1899.

We also decide that the ordinance repealing the ordinance of September 1, 1899, was ineffective to deprive the telephone company of the easement granted under the ordinance of September 1, 1899. The street rights thus acquired must be held subject to the provisions of the ordinance under which they were granted, and also subject to the reasonable regulations of the municipality by virtue of its police power. City of Baltimore v. Baltimore Trust & Guarantee Co., 166 U. S. 673, 17 Sup. Ct. 696, 41 L. Ed. 1160.

The general result below was sound, and is affirmed, but the appellant is entitled to have the injunction modified as indicated by this opinion. Remand, with directions to modify the decree. Costs of this court will be divided.