SOUTHERN BELL TELEPHONE & TELEGRAPH CO. v. CITY OF MOBILE et al.

(Circuit Court, S. D. Alabama. May 2, 1907.)

No. 257.

1. TELEGRAPHS AND TELEPHONES — RIGHTS IN USE OF STREETS — NECESSITY OF LEGISLATIVE GRANT.

A telephone company cannot lawfully occupy the streets of a city with its poles and wires without legislative authority, granted directly by the Legislature or by the municipality in pursuance of express or implied power delegated to it.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Telegraphs and Telephones, § 6.

Rights of telegraph and telephone companies to use of streets, see note to Southern Bell Telephone Co. v. City of Richmond, 44 C. C. A. 155.]

2. SAME—CONSTRUCTION OF STATUTE—"HIGHWAYS."

Code Ala. 1896, § 2490, which provides that "the right of way is granted to any person or corporation having the right to construct telegraph or

telephone lines within this state to construct them along the margin of public highways," confers upon a telephone company the right to construct its lines in the streets of a city, which are "highways" within the meaning of the statute.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Telegraphs and Telephones, § 6.

For other definitions, see Words and Phrases, vol. 4, pp. 3291–3306; vol. 8, p. 7678.]

3. MUNICIPAL CORPORATIONS—POWER TO GRANT RIGHT TO USE STREETS—TELEPHONE COMPANIES—CONTRACT.

A city given by its charter power to establish and regulate sidewalks, streets, and avenues and appurtenances or appendants thereto, has implied authority to grant the right to a telephone company to use its streets at least to such extent that an ordinance granting such right, accepted and acted on by the company, creates a contract which is binding on the city itself, whatever may be its effect on the rights of others.

4. TELEGRAPHS AND TELEPHONES—NATURE OF RIGHT GRANTED.

A right of way upon a public street granted to a telephone company, whether by a Legislature or city council, is an easement and as such is a property right entitled to all the constitutional protection afforded other property and contracts and of which the company cannot be deprived except by due process of law.

5. INJUNCTION—RESTRAINING ACTION BY CITY—INTERFERENCE WITH PROPERTY RIGHT.

An injunction will be granted to restrain a city from removing the poles and wires erected in its streets by a telephone company under lawful authority, in the exercise of its police powers, and without a judicial determination that they constitute an obstruction which interferes with the safety or convenience of ordinary travel.

In Equity.

Hunt Chipley and McIntosh & Rich, for complainant.

B. B. Boone, for defendants.

TOULMIN, District Judge. The pleadings in this case are: The bill of complaint, the motion of defendants to dismiss the bill for want of equity, the defendants' demurrer to the bill, and their answer to the bill. The case is now submitted on complainant's motion for an injunction pendente lite, and on defendants' motion to dismiss and their demurrer to the bill.

The bill alleges, substantially, that complainant is conducting its business in the city of Mobile under and by authority of the general laws of the state of Alabama and of two ordinances adopted by said city, one on December 13, 1889, and the other on June 24, 1901, and which are claimed by complainant as contracts between it and said city. Said ordinances are attached to the bill as parts thereof, and marked "Exhibits A and B," respectively. The first section of the ordinance of December 13, 1889, is as follows:

"Be it ordained by the mayor and general council of the city of Mobile, that the Southern Bell Telephone & Telegraph Company, their successors and assigns, be and are hereby granted right of way for erection and maintenance of poles and wires with all appurtenances thereto for the purpose of transacting a general telephone and telegraph business, through, upon and over the streets, alleys and public grounds of the city of Mobile, provided, that said company shall at all times when so requested by the city authorities permit their poles and fixtures to be used for the purpose of placing and maintaining thereon any wires which may be necessary for the use of the police or fire department of the city of Mobile, and further provided, that such poles and

wires shall be erected so as not to interfere with ordinary travel through the streets and alleys."

The ordinance of June 24, 1901, contains, among other things, the following:

"Section 1. Be it ordained by the mayor and general council of the city of Mobile, Alabama, as follows: That permission be and the same is hereby granted to the Southern Bell Telephone & Telegraph Company, its successors and assigns, to put down underground conduits, pipes or tubes, and operate and maintain cables, wires and electrical conductors through them, under the streets, sidewalks, public places, alleys or lanes of the city of Mobile, Alabama.

"Sec. 2. Be it further ordained, that the work of putting down underground conduits, sub-ways or pipes, in the area described as follows: Upon all streets embraced within that portion of the city of Mobile commencing at the foot of Church street at the Mobile river and running westwardly including both sides of Church street to Jackson street, thence northwardly along both sides of Jackson street to St. Louis street, thence eastwardly along both sides of St. Louis street to the Mobile river, the said Mobile river being the eastern boundary of said district, shall begin within six (6) months from the passage of this ordinance, and shall be completed within eighteen (18) months and that underground cables, wires and electrical conductors shall be drawn in same and be in operation, and all their poles now standing in said area, except those necessary for the distribution from an underground system, shall be removed from the streets within eighteen months from the passage of this ordinance. The said company, its successors and assigns, are hereby granted permission to set poles, with the necessary fixtures and electrical conductors, along and over the public streets, highways, alleys and lanes of the city of Mobile, Alabama, outside the area above described as its business may from time to time require, provided that all poles shall be neat, symmetrical and painted, and that no electrical conductor shall be placed less than twenty-three (23) feet above the surface of the ground, and iron steps shall not be placed less than eight (8) feet above the surface of the ground."

"Sec. 5. Be it further ordained, that in consideration of the rights and privileges herein granted, said company shall provide one cross-arm on each pole and space not to exceed one duct in the sub-ways constructed by virtue of this ordinance, for the free use of the police and fire alarm system of the city of Mobile, Alabama.

"Sec. 6. Be it further ordained, that the said company shall, at all times, be subject to the city ordinances now in existence, or may be hereafter passed, relative to the use of public streets by telephone and telegraph companies.

"Sec. 7. Be it further ordained, that nothing in this ordinance shall be held or construed as abridging any power the city now has, or may hereafter acquire, to require all electrical poles upon any street, alley or public place from being put under ground."

The bill alleges: That all the poles owned, used, or controlled by complainant have been erected over and along the various streets of said city and are maintained strictly in accordance with the terms and conditions of said ordinances; that said city has been given the free use of all the poles of complainant erected in said streets for its fire and police alarm wires, as well as a large number of telephones in the conduct of the public business of said city, in accordance with the provisions of said ordinances and in consideration of the rights and privileges thereby granted to complainant.

The bill also alleges that on June 24, 1901, the city of Mobile, through its general council, adopted an ordinance, being Exhibit C attached to the bill, containing, among other things, the following provisions:

"Sec. 2. The city electrician is hereby authorized, empowered and directed to superintend and determine the proper placing and adjustment of all wires

or appliances for the transmission of electric currents, and in accordance with the provisions of the following sections of this ordinance, and in such manner as shall minimize the liability of accident, fire or damage to life or property. He shall further be required to superintend, manage and operate the fire alarm and police telegraph systems; to attend all fires which occur in the city, with proper appliances for cutting wires and moving same to afford protection as far as possible to property and the lives of persons."

"Sec. 5. It shall be the duty of the city electrician to so direct the placing of poles and wires in the streets, alleys and public places of the city that the same shall cause as little obstruction as possible, either to public travel on such thoroughfares or to the private use and enjoyment of adjacent property. It shall also be his duty, and he shall have authority, to compel, the removal of superfluous poles."

"Sec. 7. It shall be the duty of the city electrician to so direct the placing, stringing and attaching of wires upon poles erected in the streets and alleys of the said city, that the same shall cause as little obstruction, either to travel in the streets or to the use and enjoyment of private property as possible; to compel the joint use of the poles wherever practicable; and in case the joint users of any such pole are unable to agree on such joint use or the rental to be paid the owner of such pole for such use the city electrician and board of public works shall fix such rate, which shall be binding upon the parties and companies interested; provided, that either party may appeal from the decision of such electrician and board as to such joint use or the amount of rental to be paid for the use of any such pole for the privilege of attaching wires thereto, to the general council of the city of Mobile."

It alleges that the board of public works referred to in said ordinance has no right, power, or authority conferred upon it, by the act creating it, to deprive complainant of its property without due process of law, or to require it to abandon its property which was being used in the conduct of its business in said city, and it alleges: That among the large number of poles erected by it along and over the streets of said city it had four poles on the east side of Claiborne street between Saint Anthony and Congress which were originally put there some eight or ten years ago, and have since that time been constantly used by complainant in its business. That said board of public works a few days prior to February 7, 1907, made an order in words and figures as follows:

"It is hereby ordered by this board that the Southern Bell Telephone & Telegraph Company shall remove their poles from said street and shall make joint use of the said four poles erected by the Home Telephone Company, by placing on each pole as many cross-arms, not exceeding six, as said Southern Bell Telephone & Telegraph Company may consider expedient in its business, together with such number of wires and cables as will be properly accommodated by six cross-arms, and the Southern Bell Telephone & Telegraph Company is hereby authorized and directed to erect its cross-arms, wires and cables on said four poles of the Home Telephone Company under the direction of the city electrician. It is further ordered that if said Southern Bell Telephone & Telegraph Company has not complied with this order within thirty days from this date, that the city electrician shall thereupon remove from said portion of Claiborne street the wires, poles and cross-arms of the Southern Bell Telephone & Telegraph Company."

That defendant Lyons, assuming to act for said board, and as mayor of said city, to enforce said ordinance of June 24, 1901, hereinbefore referred to as "Exhibit C," and the order of said board, did on March 29, 1907, direct the said city electrician, Thomas H. Chamberlain, to cut down and remove said four poles on Claiborne street, and that

said Chamberlain did cut down and remove the wires of complainant from said poles and cut down said poles, thereby destroying complainant's said property.

The bill further alleges: That when compainant undertakes, as it has a legal right to do, to replace its said poles, it will be interfered with and prevented from doing so by the defendants unless they are restrained by this court; that said ordinance of June 24, 1901, referred to as "Exhibit C," is void and of no effect, in so far as it undertakes to authorize said city electrician or said board of public works to require complainant to remove its poles from the streets of said city, and also so far as it undertakes to authorize said electrician or said board of public works to remove said poles from said streets. And the bill alleges that said board of public works has made other orders under said ordinances and threatens to interfere with the wires and poles of complainant at other places in said city, to the irreparable injury of complainant.

The bill prays an injunction against the city of Mobile, its officers and employés, said Patrick J. Lyons, as mayor of said city of Mobile, the board of public works of said city, and said Thomas H. Chamberlain, electrician of said city, restraining them from interfering with the property of complainant in said city, its wires and poles, and any and all apparatus constituting its telephone plant and system in said city, and that they be restrained from interfering with complainant, its servants and employés, in replacing its poles on the east side of said Claiborne street, and that said ordinance referred to as "Exhibit C," so far as it undertakes to authorize or empower the defendants to interfere with the poles, wires, or other apparatus constituting the telephone plant of complainant in said city, as the same is now established and maintained under the said ordinances, be declared null and void, with a prayer for general relief.

The answer of defendants is, in substance: That said ordinance of December 13, 1889, is null and void because the city of Mobile, under its charter then in force, had no authority to grant any right or franchise in the streets within the limits of said municipal corporation; that it was authorized to provide police regulations only; that it had no power, express or implied, conferred on it by the Legislature of Alabama, to grant rights of way or franchises to persons or corporations to use its streets; and that the maintenance by complainant of its poles and wires upon the same is without lawful authority and is a public nuisance per se.

The answer further is that the ordinance of June 24, 1901, referred to as "Exhibit B," is null and void because complainant did not make publication of the application to the general council of said city for the passage of said ordinance, and did not file with the clerk of said city any proposal of percentage to be paid for the use of the streets for the grant of the right of way claimed, which defendants say were, by the charter of said city then in force, prerequisites to the validity of said ordinance, and therefore defendants say no right or authority exists in complainant to erect or maintain its wires or poles in said streets. Wherefore they claim that said city has the right and power to remove said poles as a public nuisance per se.

No telephone company can lawfully occupy the streets of a city with its poles and wires without legislative authority granted directly by the Legislature, or by the municipal authorities in pursuance of express or implied power delegated to it. The authority to consent to the use of the streets of a city by a telephone company resides primarily in the Legislature of the state, but may be delegated to the municipality directly concerned. City of Knoxville v. Africa, 77 Fed. 501, 23 C. C. A. 252; Board of Mayor, etc., v. East Tenn. Tel. Co., 115 Fed. 304, 53 C. C. A. 132.

We will first inquire as to the origin and nature of the right or privilege claimed by the complainant; second, whether the ordinance of June 24, 1901, referred to in the bill as "Exhibit C," thereto attached, operates as an interference with it; and, third, whether the court of equity has the jurisdiction to interfere by the aid of injunctive relief.

The basis of complainant's alleged right is the statute of the state of Alabama. That statute provides that "the right of way is granted to any person or corporation having the right to construct telegraph or telephone lines within this state to construct them along the margin of public highways." Code Ala. 1896, § 2490.

It appears that the municipality of Mobile had no express authority conferred upon it by its charter in force on December 13, 1889, to grant rights of way or franchises through or over its streets, and it is contended by defendants that as the city had no such express authority the ordinance passed by its general council on December 13, 1889, granting to complainant the right of way for the erection and maintenance of poles and wires, with appurtenances thereto, for the purpose of transacting a general telephone business, through, upon, and over the streets of said city, was null and void. If said ordinance was void as a grant of a franchise for the reason stated, yet it can hardly be questioned as giving consent by the city to the use of its streets by the complainant for the purposes therein mentioned, and I think was effective as a contract between the city and complainant, as I will hereinafter more particularly consider.

The defendants further contend that the complainant can claim no right under the state statute referred to, because they say that the term "highways" used in the statute refers to rural highways only, and does not embrace city streets. "By statute in most of the states, telegraph and telephone companies are given the right to construct their lines over the public highways. * * * The term 'Highways' embraces city streets within the meaning of the statutes conferring upon telegraph and telephone companies the right to occupy the public highways of the state, unless a different intent is clearly indicated. * * * As a general rule, such companies are given by statute the right to occupy all streets and highways, but it is made the right and duty of each municipality to fix the terms and conditions upon which its own streets may be used." 27 Am. & Eng. Encyc. of Law (2d Ed.) 1006.

In Dillon on Corporations, it is said:

"Sec. 518. Public streets, squares, and commons, unless there be some special restriction when dedicated or acquired, are for the public use; and the use is none the less for the public at large as distinguished from the municipality,

because they are situate within the limits of the latter, and because the Legislature may have given the supervision and control of them to the local authorities. The Legislature of the state represents the public at large, and has full and paramount authority over all public places. 'To the commonwealth here,' says Chief Justice Gibson, 'as to the king of England, belongs the franchise of every highway, as a trustee for the public; and streets, regulated and repaired by the authority of a municipal corporation, are as much highways as the rivers, railroads, canals, or public roads, laid out by the authority of the quarter sessions.'

"Sec. 519. By virtue of its authority over public ways, the Legislature may authorize acts to be done upon them, or legalize obstructions therein, which would otherwise be deemed nuisances. As familiar instances of this may be mentioned the authority to railway, water, telegraph, and gas companies, to use or occupy the streets and highways for their respective purposes. And it may be here observed that whatever the Legislature may authorize to be done is, of course, lawful, and of such acts, done pursuant to authority given, it cannot be predicated that they are nuisances; if they were such without, they cease to be nuisances when having the sanction of, a valid statute."

Municipal corporations constitute a part of the civil government of the state, and their streets are highways.   N. O. Gas Co. v. La. Light Co., 115 U. S. 650, 6 Sup. Ct. 252, 29 L. Ed. 516; Abbott v. City of Duluth (C. C.) 104 Fed. 833.

If the word "highways," in its ordinary and legal significance, includes streets, and there are no other words in the statute under consideration to lessen or limit its meaning, it is held that the word includes urban as well as rural highways.  There is nothing in the subject-matter of the statute of Alabama that is inapplicable to urban highways.   Abbott v. City of Duluth, supra.   I therefore hold that the state of Alabama, by the statute referred to, granted to complainant the right of way on the streets of the city of Mobile for the purpose of constructing thereon its telephone lines.

Moreover, my opinion is that the city had, under its charter in force on December 13, 1889, implied power to grant the right of way to complainant, as by the ordinance of that date.   By its charter, authority was delegated to it to establish and regulate sidewalks, streets, and avenues, and appurtenances or appendants thereto.   I think the city is given, by its charter, general control over its streets.   Sections 20 and 21, Charter of December 10, 1886.

The power to grant a right of way through the streets of a town may be implied from a grant of general control over its streets.   Board of Mayor v. East Tenn. Tel. Co., 115 Fed. 304, 53 C. C. A. 132; Pike's Peak Power Co. v. City of Colorado, 105 Fed. 2, 44 C. C. A. 333.

The Supreme Court of Missouri, in State v. Murphy, 134 Mo. 562, 31 S. W. 786, 34 L. R. A. 369, 56 Am. St. Rep. 515, said:

"Under its general powers to regulate the use of streets, the city has authority to authorize corporations and persons, for the purpose of serving the public, to string telegraph, telephone, or electric light wires upon poles above the surface or through conduits beneath the surface of the streets, provided such structures and mechanical appliances do not materially interfere with the ordinary uses of the streets and public travel thereon."

Dillon on Municipal Corporations, § 575, says:

"The ordinary powers of municipal corporations are usually ample enough, in the absence of express legislation on the subject, to authorize them to permit or refuse the use of the streets within their limits for such purposes."

162 F.—34

The purposes spoken of were the use of the streets by street railways.

I know of no decision to the contrary, and none has been brought to my attention except the case of L. & N. R. R. Co. v. M. J. & K. C. R. R. Co., 124 Ala. 162, 26 South. 895, which has been cited on the proposition by the defendants. I do not think that case militates against the doctrine in the authorities referred to by me. The case in 124 Ala. 162, 26 South. 895, was where the city of Mobile, without express legislative authority, had granted to defendant a franchise upon and along Water street in said city to construct and operate its railroad as a common carrier. The plaintiff was the owner of abutting land on said street and of land at the foot of the south terminus of said street, over which street and land at the terminus thereof defendant proposes to construct its said railroad, track, etc., without condemnation proceedings or just compensation to plaintiff. It was averred that the building and operation of the railroad materially obstructed said street as a public highway and constituted a public nuisance in said street. It was also averred that the action of defendant was under a pretended franchise from the city of Mobile granting it the right to construct and operate its said railroad. The court said that the case was that of an adjacent proprietor asking to enjoin a defendant from permanently obstructing a public street in such manner as to impair the usual and customary use of the same by the public and of special injury and damage to the plaintiff, and the court held that an unauthorized construction of a railroad in a street is a public nuisance that may be enjoined, and that a bill may be filed therefor by any person who would sustain special injury on account of the nuisance; and further held that, in the absence of express power conferred by the Legislature, a municipal corporation has no authority to grant a franchise of its public streets for railroad purposes and uses. The court cites, among others, Perry v. N. O., M. & C. R. R. Co., 55 Ala. 426, 28 Am. Rep. 740; Stowers v. Postal Tel. Cable Co., 68 Miss. 559, 9 South. 357, 12 L. R. A. 864, 24 Am. St. Rep. 290; Theobold v. L., N. O. & T. R. R. Co., 66 Miss. 279, 6 South. 230, 4 L. R. A.. 735, 14 Am. St. Rep. 564.

In the Perry Case, the Supreme Court of Alabama decided that a municipal corporation cannot, in the absence of express legislative authority, allow its streets to be used for the purpose of laying tracks across and through them by a railroad company, *to the injury of the proprietor of the adjacent lands.* (Italics mine.)

The case in 68 Miss. 559, 9 South. 357, 12 L. R. A. 864, 24 Am. St. Rep. 290, was a suit by an abutting property owner to enjoin a telegraph company from erecting its poles in front of complainant's property. The court held that the authority granted by the municipality would protect the company in its interference with the rights of the public which it represented by the local authorities, but it cannot operate to withdraw from the complainant his right of property and confer it upon the company. To the same effect is the case of Theobold v. L., N. O. & T. R. R. Co., 66 Miss. 279, 6 South. 230, 4 L. R.. A. 735, 14 Am. St. Rep. 564.

As I understand these decisions, the substance and effect of them are that a municipal corporation cannot, in the absence of express legislative authority, allow its streets to be used by a railroad company for the purpose of laying its roadbed and track to the injury of the adjacent owners. And such, I think, is the substance and effect of the decision in L. & N. R. R. Co. v. M., J. & K. C. R. R. Co. It is true that in the course of the opinion the court quotes from the city's charter of February 6, 1895, this language, "It may also make ordinances concerning the rights of way, regulation of street cars, street railways, and all other railroads," and says this would seem to exclude the idea of the grant of new rights of way, but restricts the power concerning such rights of way as already exist. The cases cited are, I think, clearly distinguishable from, and inapplicable to, this case. Here the city has granted the right to the use of its streets under one ordinance. It has, under another, given its permission for their use by the complainant, and it is now seeking to destroy or to impair that right, and that notwithstanding there were considerations for such grant, which have been complied with.

The defendants further contend that the ordinance of June 24, 1901, Exhibit B, is null and void because they say that complainant did not make publication of its application for the passage of said ordinance, or propose to pay a percentage for the use of the streets therein granted to it, as was required by the charter of the city of Mobile. It is enough to say, in answer to this contention, that there is nothing now before the court to show that an application for any right or permission granted by said ordinance and involved in this suit was made by the complainant. For aught that now appears, the permission therein granted to set poles with the necessary fixtures, along and over the the streets of the city outside of a certain area therein described, was given without application, but voluntarily by the city in consideration of the complainant's providing poles, space, and cross-arms for the free use of the police and fire alarm systems of said city, as is stipulated for in said ordinance. That part of the ordinance granting permission to the complainant to put under ground its pipes, wires, etc., is in no way involved in this litigation. However, from the view I take of this case, further consideration of said ordinance is unimportant.

There is another proposition in this case to which I will advert for a moment, and that is that:

"A city has two classes of powers: The one legislative, public, governmental, in the exercise of which it is a sovereignty and governs its people; the other, proprietary, quasi private, conferred upon it, not for the purpose of governing its people, but for the private advantage of the inhabitants of the city and of the city itself as a legal personality."

In the exercise of the powers of the former class, it is governed by the rule invoked by the defendants in this case. "But in the exercise of the powers of the latter class it is controlled by no such rule, because it is acting and contracting for the private benefit of itself and its inhabitants, and it may exercise the business powers conferred upon it in the same way, and in their exercise it is to be governed by the same rules that govern a private individual or corporation." Illinois Trust & Savings Bank v. City of Arkansas, 76 Fed. 271, 22 C. C. A.

171, 34 L. R. A. 518, and authorities therein cited; Pike's Peak Power Co. v. City of Colorado, supra; Safety In. W. & C. Co. v. Mayor, etc., 66 Fed. 140, 13 C. C. A. 375; 20 Am. & Eng. Encyc. of Law (2d Ed.) 1131, 1132.

The court, in the case of Board of Mayor, etc., v. East Tenn. Tel. Co., supra, said:

"The consent to the occupancy of the streets by the poles and wires of the telephone company for the purpose of maintaining a public telephone system was the grant of an easement in the streets and a conveyance of an estate or property interest, which, being in a large sense the exercise of a proprietary or contractual right rather than legislative, was irrevocable after acceptance, unless the power to alter or revoke was reserved."

I think that the ordinances invoked by the complainant in this case are in their nature and terms contracts, in the adoption of which the city was not exercising its governmental or legislative powers, but its business or proprietary powers. The purpose of said ordinances was, not to govern its inhabitants but to obtain a private benefit for the city itself and its inhabitants. Ill. Trust & Sav. Bk. v. City of Arkansas, supra; 1 Dill. Mun. Cor. § 27. A right of way upon a public street, whether granted by act of the Legislature or ordinance of a city council, is an easement, and as such is a property right and entitled to all the constitutional protection afforded other property and contracts. City of Knoxville v. Africa, 77 Fed. 501, 23 C. C. A. 252; Board of Mayor et al. v. East Tenn. Tel. Co., supra. The city has, under the right of police regulation, the power to prevent the obstruction of the streets unlawfully; but under such power the city cannot require the removal from the streets of telephone poles and wires erected under lawful authority, where such action is not based upon any finding or claim that the poles or wires interfere with the safety or convenience of ordinary travel. There is no such claim here; but it is claimed that the poles are a nuisance per se because erected without lawful authority.

The principle is well settled that a party who is in actual possession of property, claiming under color of title, is not to be ousted except by means provided by law. A. & P. Tel. Co. v. U. P. Ry. Co. (C. C.) 1 Fed. 754; W. U. Tel. Co. v. St. J. & W. Rwy. Co. (C. C.) 3 Fed. 433. "Forfeitures of rights and property cannot be adjudged by legislative act, and confiscation or destruction without a judicial hearing after due process of law." Calhoun v. Fletcher, 63 Ala. 575. "The terms 'due process of law' are intended to protect from confiscation by legislative enactments; from forfeitures and destruction without a trial by the ordinary modes of judicial proceedings." Davis v. State, 68 Ala. 58, 44 Am. Rep. 128. "The guaranty of due process of law secures to every citizen a judicial trial before he can be deprived of life, liberty, or property." 10 Am. & Eng. Encyc. of Law (2d Ed.) 293.

We have seen from the authorities cited that the grant to the complainant was an easement and a property right or interest. That the poles and wires used under said grant were its property is not disputed, and that some of them were cut down and removed by the defendants, their agents or servants, and that others are threatened to be so cut down and removed, is not disputed. If it were claimed by the

defendants that the poles and wires of complainant interfered with the safety or convenience of ordinary travel, and were therefore a nuisance, appropriate judicial proceedings to hear and determine such claim should be resorted to.

My opinion is that the defendants cannot be permitted to oust the complainant from possession and use of its poles by cutting and removing them from their places on the streets without "due process of law." An injunction will be granted to restrain a party from deciding for himself a question involving controverted rights and to compel him to resort to the courts, and this without regard to the absolute merits of the controversy. It is enough that there is such controversy to justify the interference of a court of equity.

My decision therefore is:

First. That the complainant had a lawful right to erect its telephone poles, and appliances connected therewith, on the streets of the city of Mobile.

Second. That the ordinance of June 24, 1901, referred to as "Exhibit C," so far as it undertakes to deprive the complainant of the easement and street rights granted under the ordinances of December 13, 1889, and June 24, 1901, and referred to as "Exhibits A and B," respectively, or to interfere with the same, impairs the obligations of complainant's contract under which said easement and rights were granted, and seeks to deprive the complainant of its property without "due process of law," and is null and void. Such rights, however, are subject to the reasonable regulations of the city municipality by virtue of its police power.

Third. That the court of equity has the jurisdiction to afford injunctive relief herein.

The motion to dismiss the bill for want of equity is denied, the demurrer to the bill is overruled, and an injunction pendente lite is granted as prayed for.