## MAYOR, ETC., OF KNOXVILLE v. AFRICA.

### CITIZENS' RY. CO. v. AFRICA.

(Circuit Court of Appeals, Sixth Circuit. October 5, 1896.)

### Nos. 388 and 389.

1. **APPEALS FROM PRELIMINARY INJUNCTIONS—DECISION ON MERITS.**
    Upon an appeal from an order granting a preliminary injunction, where the question involved is one of law, determining the ultimate rights of the parties, and is fully presented by the record, the court of appeals will decide the same upon the merits, and render a decree finally disposing of the case.

2. **RAILWAYS—RIGHTS OF WAY IN STREETS AND HIGHWAYS—LEGISLATIVE POWERS—MUNICIPAL CONSENT.**
    Under the well-settled law of Tennessee, the power to grant to a public corporation a right of way for the operation of public railroads, commercial or street, on or over a particular street or public highway, resides primarily in the legislature, but may be delegated to municipal governments.

3. **SAME—LEGISLATIVE OR MUNICIPAL GRANTS—ASSIGNABILITY.**
    A railway right of way in a public street, whether granted by legislature or city council, or in any other valid mode, is an easement, and as such is a property right, capable of assignment, sale, and mortgage, and entitled to all the constitutional protection afforded other property rights and contracts.

4. **SAME.**
    In Tennessee, two things seem essential to the maintenance and operation of a street railroad: First, a corporate organization, obtained from the state, under the general incorporation law, whereby the franchise essential to the operation of a street railroad for tolls, is to be acquired; second, a right to enter upon particular streets and occupy them with the necessary tracks and equipment, which right is to be procured by contract with the city authorities, to whom the authority to make the proper grant has been delegated by the legislature. Mill. & V. Code, § 1921.

5. **SAME—POWER OF CITY COUNCIL—DEFINITE DESIGNATION OF ROUTE.**
    Under a general incorporation law for street railways, which requires the charter to set out the termini and general route of the proposed road, and provides that no streets shall be occupied until the "consent" of the city authorities is first obtained by an ordinance, prescribing the "terms" thereof (Mill. & V. Code, §§ 1920–1925), the power of the city to so consent is limited to the streets included between the termini and in the general route described in the charter; and a further grant, purporting to give a right of way over all the streets of the city, present or prospective, thereby delegating to the company the power to elect from time to time the streets which it will occupy, is invalid. 70 Fed. 729, reversed.

On Rehearing.

APPEAL FROM PRELIMINARY INJUNCTION—DECISION.

On appeal from an order granting a preliminary injunction, the circuit court of appeals will not determine the cause on its merits, when the rights of the parties can only be made to appear by full proof of the facts, nor will it reverse the decree, unless the court below has abused its discretion.

Appeal from the Circuit Court of the United States for the Northern Division of the Eastern District of Tennessee.

This is an appeal from an order granting a preliminary injunction upon bill, answer, exhibits, and upon ex parte affidavits filed in support of the bill. The controversy involves the right of the complainant, J. Simpson Africa, who is engaged in the operation of an electric street railroad in the city of Knoxville, to extend his railroad, and occupy three unoccupied streets of said city with his track, poles, and attachments, and operate thereon an electric street railroad. His right to occupy the streets in question, Oak, Church, and Central avenue, is denied by the city, which has consented to the occupation of said streets by a rival company. The complainant is a citizen of Pennsylvania. At a mortgage foreclosure sale under a decree of the circuit court of the United States for the Eastern district of Tennessee, he became the purchaser of the street railroad formerly owned and operated by the Knoxville Electric Railway Company. That company was formed by the consolidation, under the Tennessee statute, of four Tennessee street-railway companies, each of which owned and operated street railroads in the city of Knoxville. By this consolidation the corporate property, powers, and franchises of each of the constituent companies passed to the Knoxville Electric Railway Company. Mill. & V. Code, §§ 1263–1269, inclusive. The mortgages foreclosed included all the property and franchises of the consolidated company, and Africa claims to have succeeded to the ownership of the said consolidated line of street railroad, and to all of the street grants and franchises of each of the constituent companies, and to the franchises essential to the operation for tolls of a street railroad.

The senior constituent company was the Knoxville Street-Railroad Company, a corporation organized January 7, 1876, under the general corporation law of Tennessee. Mill. & V. Code, §§ 1704, 1705; Id. §§ 1920–1925, inclusive. The articles of association filed by the Knoxville Street-Railroad Company thus described the termini and route of the street railroad which they proposed to construct: "Commencing at the intersection of Main and Gay streets in said town, and extending thence and over said Gay street to Jackson street; thence on and over said the same to Broad street; thence on and over the same to the point of intersection with Crozier street; thence on and over Crozier to Vine street; thence on Vine to Gay; thence from same on and over Union street to Crooked; thence to Asylum; thence on same to Broad street; thence on same to its junction with Jackson street; and also extending along and over the portions of Crozier and Jackson streets not hereinbefore mentioned, and over Depot, White, Fifth avenue, Hardee, Mabry, Clinch, East Clinch, Asylum, Union, Prince, Locust, Crooked, Cumberland, Patton, Morgan, Park, Temperance, State, Hill, McGhee, Jackson, Bellevue, Florida, Fouche, Mill, Kennedy, and Main streets; and also extending on and over all such other streets or extensions of streets as are now or may be hereafter opened or laid out in said city, to its corporate limits, and as much further, on all such roads leading into the corporate limits, as said company may find it desirable to use and operate." On the 11th of January, 1876, an ordinance was passed by the council of the city of Knoxville, granting a right of way to the Knoxville Street-Railroad Company. By the first section it was ordained "that the right of way over and use of all the streets of said city * * * mentioned and described in the charter of said company, and all other streets or extensions of streets, within the corporate limits, hereafter to be made, established, and opened, are hereby given and granted to the said Knoxville Street-Railroad Company; and also is granted the further right to the said company to cut and level any of the streets, and to build on and over the same a line of railways to be used under its charter; provided always that the said company, in the use of said streets, shall be governed and confined to the grade or grades fixed or to be fixed by the city." By the seventh section the ordinance was declared to have all the force and effect of a written contract. Sections 8, 9, and 10 were as follows:

"Sec. 8. The rights and privileges herein granted are intended and understood to be and exist for and during the corporate existence of said company.

"Sec. 9. The charter of said Knoxville Street-Railroad Company, mentioned in this ordinance, is that which bears the certificate of the secretary of state, and the great seal of the state of Tennessee, affixed on the 5th of January, 1876, and which is registered in Corporation Record Book A, pp. 200-204, in said secretary's office, and in Book O, vol. 3, pp. 155-159, in the register's office of Knox county, Tennessee; and the said charter is to be taken and treated as a part hereof as fully as though herein set out.

"Sec. 10. Be it further ordained that all the privileges and immunities and exemptions in the ordinance given and granted shall be deemed to be withdrawn and revoked, and this ordinance repealed, if said company shall fail to complete its road track from Main street to Jackson street within nine months from the passage of this ordinance."

The route described from Main street to Jackson was completed within the time prescribed, and some extensions of that route were shortly thereafter constructed, though no effort was made to occupy the large number of streets mentioned and described in the ordinance, and not included by the route from Main to Jackson. On the 5th of July, 1892, the city council by an ordinance revoked the grant of January, 1876, as to all the streets not theretofore occupied. In August, 1895, the same council granted to the Citizens' Railway Company a right of way upon a number of unoccupied streets of the city, including Oak, Church, and Central avenue, and over Gay street from Hill to Depot street. This part of Gay street was already occupied by the double tracks of the complainant, and the ordinance granted a right of way over Gay street on condition that no additional track should be constructed thereon,—a condition which would compel the use of complainant's tracks for a short distance, either as the result of an agreement with him or through condemnation proceedings.

The pleadings and exhibits make it clear that both the complainant and the Citizens' Street-Railway Company were preparing to occupy the streets in controversy, and that each intended to construct a line of railroad upon those streets. That the activity of the complainant was mainly due to the well-understood purpose of its rival is equally apparent. Complainant was asserting a right to construct a railroad on those streets upon the ground that the ordinance of 1876 granted a right of way to the old Knoxville Street-Railroad Company upon and over every street then existing or thereafter laid out, and that he had succeeded to that right. The Citizens' Railway Company claimed under the grant to it of 1895, and denied that the complainant had any authority to occupy the streets in question. Neither claimed any exclusive right, but, as the streets were narrow and the grants conflicting, first occupancy was deemed of great importance. Under this state of conflicting claims, the complainant, on the night of September 29, 1895, after or about midnight, entered upon Oak and Church streets and Central avenue with a large force of hands, and proceeded to lay down its track and plant its poles at no less than five different points, and succeeded in constructing at each point a fragment of railroad track. The following day the city of Knoxville filed a bill in the chancery court of the state against the complainant and his associates and servants, and obtained a preliminary injunction restraining complainant from proceeding with the construction of its said railroad. Being thus checkmated, the complainant resorted to the United States circuit court, and there filed the present bill, making both the city of Knoxville and the Citizens' Railway Company defendants. The object of this bill was to enjoin the city and the Citizens' Railway Company from removing the track and poles so clandestinely placed upon the controverted streets; the ground upon which this relief is sought being that his right is valid under the ordinance of 1876, and that the city had threatened to remove by force the fragments of road so constructed, and that like threats had been made by the railway company. These short and detached fragments of road so placed on said streets seem to be regarded as monuments marking priority of occupancy, and as such being deemed of a value not to be adequately measured by the rude machinery of a law court. This bill was answered under oath. An application for an injunction was argued and elaborately considered by Judge Clark, who, being of the opinion that complainant was vested with a contract right to enter upon and occupy any and all of the streets of Knoxville by virtue of the ordinance of 1876, granted an injunction according to the prayer of the bill.

From this order allowing an injunction an appeal has been perfected under the seventh section of the court of appeals act of March 3, 1891.

Joshua W. Caldwell, for mayor, etc., of Knoxville.

Tully R. Cornick and Lucky, Sanford & Tyson, for Citizens' Ry. Co.

Webb & McClung and Wheeler & McDermott, for Africa.

Before TAFT and LURTON, Circuit Judges, and HAMMOND, J.

LURTON, Circuit Judge, after making the foregoing statement of facts, delivered the opinion of the court.

The principal points urged by counsel against the granting of an injunction are these: (1) That any street grant which accrued to the Knoxville Street-Railroad Company, or its successors, under the ordinance of 1876, has been abandoned or lost, upon streets unoccupied, by the failure of that company and its successors to avail itself, for a period of nearly 20 years, of the consent thereby given; and that an intention to abandon the right of way upon the unoccupied streets is established, not only by the long delay in occupying them, but by acts and conduct inconsistent with the present existence of such right. (2) That the complainant is estopped from denying the abandonment of a right of way upon unoccupied streets, and the validity of the repealing ordinance of 1892, by the conduct of his predecessors in the title, and of himself, in applying for and accepting special ordinances granting rights inconsistent with the legal existence of rights on such streets under the ordinance of 1876, and especially by the application in 1895 for a right of way upon the streets now in controversy. (3) Because the special facts stated in the bill as ground for equitable relief by injunction are insufficient in law, or, if sufficient, are denied by the sworn answer, and not supported by the ex parte affidavits filed in support of the application for a preliminary injunction. (4) Because the right of way granted under the ordinance of 1876 was limited to the corporate existence of the Knoxville Street-Railroad Company by express provision contained in the eighth section thereof, and that the corporate existence of the Knoxville Street-Railroad Company terminated upon the consolidation of that company with other street-railroad corporations in 1889. (5) Because the articles of incorporation do not designate the termini of the proposed railroad, or the general route between such termini, as required by the general corporation law, under which the Knoxville Street-Railroad Company was organized. (6) That the ordinance of 1876 does not constitute a valid grant of a right of way upon any particular street or streets, beyond the specific route first described in the charter, to which reference is made, to wit: "Commencing at the intersection of Main and Gay streets, and extending thence and over said Gay street to Jackson street; thence on and over the same to Broad street; thence on and over the same to the point of intersection with Crozier street; thence on and over Crozier to Vine street; thence on Vine to Gay; thence over same on and over Union street to Crooked; thence to Asylum; thence

on same to Broad street; thence on same to junction with Jackson street." That the remainder of the ordinance does not constitute a valid "consent," within the meaning of the statute, to the use of the network of streets afterwards mentioned, nor to those embraced in the general terms, "also extending on and over all of such other streets or extensions of streets as are now or may be hereafter opened or laid out in said city, to its corporate limits."

In Bissell Carpet-Sweeper Co. v. Goshen Carpet-Sweeper Co., 19 C. C. A. 25, 72 Fed. 545, this court undertook to construe the seventh section of the act of March 3, 1891, allowing appeals to this court from orders or decrees allowing or refusing preliminary or interlocutory injunctions, and to indicate our practice upon appeals from both kinds of injunctions. We there said, touching appeals from preliminary injunctions, that:

"Where a preliminary injunction is allowed upon a prima facie showing, and without the determination of the merits, this court will ordinarily, on an appeal, consider only the question as to whether, on the prima facie case made, there has been an abuse of discretion. Such preliminary injunctions are ordinarily intended only to operate pendente lite, or until a hearing on the merits can be had. They are granted upon a mere summary showing upon affidavits. Their issuance is not a matter of right, and rests in the sound discretion of the judge."

In the same opinion we also said, in regard to the same class of appeals, that:

"Quite another question would arise if, on an appeal from such an order, this court, upon the record, should conclude, not only that no case was exhibited for a preliminary injunction, but also that the bill could not be entertained for any purpose. In such a situation, shall it refuse to determine the case on the merits, and refuse to direct the lower court to dismiss the bill? Must it confine itself to a mere expression of opinion that the discretion of the court had been erroneously exercised, and permit a fruitless suit to be prosecuted to a final decree, ultimately to end in dismissal? Clearly, the court ought not to idly sit, and merely advise the counsel and lower court, but should, if it has jurisdiction, and it has before it a sufficient record to enable it to do justice, pronounce a judgment upon the merits, and direct the inferior court to do what it originally ought to have done."

The appeal now under consideration presents one or more questions of law going to the root of complainant's right of way upon the streets in controversy. These questions arise upon the face of the ordinance of 1876, and involve, not only its validity, but its meaning, and the duration of the rights thereby granted. They were considered by the court below, and an elaborate opinion filed, construing and determining the validity, scope, and duration of the street rights attempted to be conferred. The same questions are presented fully by the record in this court. Why shall we refuse to consider or decide them? What good is to be accomplished by confining ourselves to the shell of the case, and refusing to decide a question of law, because it is one of grave character, and goes to the foundation of the litigation? The practice of refusing to determine grave questions of law upon a mere motion to dissolve an injunction, or upon an application for a preliminary injunction, is discussed by Chancellor Cooper in Owen v. Brien, 2 Tenn. Ch. 295. The rule of practice there considered is only one for the government of nisi prius courts, and not one of universal

obligation. The practice upon such motions, as very clearly stated by Chancellor Cooper, in the case cited, was that:

"Upon a motion to dissolve an injunction, it is neither necessary nor proper for the court to undertake to decide the case upon its merits, for there is no mode, under our system, of correcting his errors, if he should make any, in the conclusions arrived at. No appeal can be taken from such rulings, and, in the meantime, irreparable injury may be done. If the court can see that there is a substantial question to be decided, it should preserve the property until such question can be regularly disposed of."

Great Western R. Co. v. Birmingham & O. J. R. Co., 2 Phil. Ch. 602; Glascott v. Lang, 3 Mylne & C. 455; Shrewsbury v. Railroad Co., 1 Sim. (N. S.) 410, 426; Ballard v. Fuller, 32 Barb. 68.

Upon the other hand, such an injunction ought not to be granted unless the plaintiff's right seems very clear, and the injunction will not operate with more hardship upon the defendant than its disallowance upon the plaintiff. Shinkle v. Railroad Co., 62 Fed. 690–692.

It is manifest that these rules of practice have no operation, upon an appeal to this court, where the legal questions are presented by the record in such a manner as that justice can be done the litigants, and fruitless delay and a second appeal avoided. Though this court will not feel itself compelled to consider and decide such appeals upon the merits, yet it will do so when the circumstances seem to require it and the record is sufficient. This practice has the high sanction of the court of appeals for the Fourth circuit in the case of Green v. Mills, 16 C. C. A. 516, 69 Fed. 852, where the opinion was by Chief Justice Fuller.

Without expressing any opinion upon the other objections urged by counsel for appellants, we are content to reverse the decree of the lower court upon the ground that the ordinance of 1876 was not a valid or effectual consent to the occupation of any street other than those embraced by the route beginning at the intersection of Main and Gay streets and terminating at the junction of Broad and Jackson. The termini and general course of that route are specifically described, and the requirement of the tenth section of the ordinance, that the track upon those streets shall be laid within a given time, is an effectual recognition of that line as a route specifically consented to by the municipality. The ordinance itself does not describe or specify or mention the streets over which it was proposed to grant any right of way, but grants a right of way over all the streets of the city "mentioned and described in the charter of said company, and all other streets or extensions of streets, within the city limits, hereafter to be made, established, and opened, are hereby given and granted." When we turn to the charter we find no beginning or ending of any specific line, route, or system, other than that set out above, which description is immediately followed by these words:

"And also extending along and over the portions of Crozier and Jackson streets not hereinbefore mentioned, and over Depot, White, Fifth avenue, Hardee, Mabry, Clinch, East Clinch, Asylum, Union, Prince, Locust, Crooked, Cumberland, Patton, Morgan, Park, Temperance, State, Hill, McGhee, Jackson, Bellevue, Florida, Fouche, Mill, Kennedy, and Main streets; and also extending on and over all

such other streets or extensions of streets as are now or may be hereafter opened or laid out in said city, to its corporate limits, and as much further, on all such roads leading into the corporate limits, as said company may find it desirable to use and operate."

Under the well-settled law of Tennessee the power to grant to a public corporation a right of way for the operation of public railroads, commercial or street, on or over a particular street or public highway, resides primarily in the legislature of the state, but may be delegated to municipal governments. Railroad Co. v. Adams, 3 Head, 598; Railroad Co. v. Bingham, 87 Tenn. 522, 11 S. W. 705; Dill. Mun. Corp. §§ 519–521. The restrictions imposed by the amendments to the constitution adopted in 1870, whereby the legislature is required to provide for the organization of corporations by general law only, would perhaps prevent the granting of a particular right of way to a particular corporation, as was done in the charter construed in Railroad Co. v. Adams, 3 Head, 598. A right of way upon a public street, whether granted by act of the legislature, or ordinance of city council, or in any other valid mode, is an easement, and as such is a property right, capable of assignment, sale, and mortgage, and entitled to all the constitutional protection afforded other property rights and contracts. City of Detroit v. Detroit Citizens' St. Ry. Co., 22 U. S. App. 570, 12 C. C. A. 365, and 64 Fed. 628; Louisville Trust & Banking Co. v. City of Cincinnati (decided at present term) 76 Fed. 296.

In Tennessee two things seem essential to the legal maintenance and operation of a street railroad,—a corporate organization, whereby the franchise essential to the operation of a street railroad for tolls is to be obtained; and the right to enter upon particular streets and occupy them with the necessary tracks and other equipment for the operation of a street railroad. The first requisite can be obtained only from the state by organization under the general incorporation law provided for those wishing such a franchise. To obtain the second requisite, the first essential is that the proper form for such a charter, being sections 1920–1925, inclusive, Mill. & V. Code, shall be used. The code provisions referred to authorize the organization of a corporation "for the purpose of constructing a street railroad" in a particular city, to be named in the application. The same statute requires that this application shall set out the termini and general route of the proposed street railroad. Having completed the organization of such a company, it next becomes essential to obtain a right of way upon the streets embraced between the termini named in the charter and included in the route therein described. For this purpose power is given the company to contract with the city authorities for the needed grant, with the distinct and emphatic proviso that:

"No one of the streets of said city shall be used by said company, nor shall any rails be laid down, until the consent of the city authorities has been first obtained, and an ordinance shall have been passed, prescribing the terms upon which the same may be done; or if the said road extend into the country, the consent of the county court must be first obtained." Mill. & V. Code, § 1921.

As we have already seen, the power to grant a right of way upon the public streets resides primarily in the legislature of the

state. This power may be, and is, by the provisions of this street-railroad law, delegated to the municipal government of the city in which the proposed railroad is to be operated. This delegated authority is a trust, to be exercised for the public benefit by ordinance duly passed, and subject to the limitations and for the purposes intended by the statute. What is the extent of the power intrusted to the city government? The answer is plain. It is to "consent" to the occupation of such of the streets of the city, between the termini named in the charter, and within the general route designated therein, as shall be deemed in the interest of the public. The "consent," when given by ordinance duly passed, constitutes a grant of a right of way on and over the streets named or described in the ordinance, and constitutes a contractual ordinance, conferring an easement which is irrevocable. By such an ordinance an incorporeal hereditament is created and vested in the grantee. Until "consent" has been given by ordinance, prescribing the terms upon which the streets desired may be occupied, no street right exists in the railroad corporation. It is a corporation endowed with the substantial corporate franchise essential to the operation of a street railroad, but it is unable to exercise this franchise because it has no right to enter upon the streets and there construct the necessary tracks and other appliances needful to the maintenance and operation of a street railroad. The power to "consent," and the power to prescribe the "terms" upon which it will consent, implies the power to refuse to consent, or to consent only upon terms and conditions deemed wise, including the right to impose such limitation upon the duration of the grant as shall seem proper to the legislative discretion. City of Detroit v. Detroit Citizens' St. Ry. Co., 22 U. S. App. 570–599, 12 C. C. A. 365, and 64 Fed. 628; Louisville Trust & Banking Co. v. City of Cincinnati (decided at present term) 76 Fed. 296. The delegated power to be exercised by the city government is not an unlimited one. It is the power to consent to the occupation of the public streets by a street railroad having a definite beginning and ending, and whose general route is designated in its charter. Within those limits it may exercise discretion. Beyond those limits its power does not extend. It is a power to be exercised by the public, through its representatives, constituting the city government, for the public benefit, and for public purposes only. It is a power held in trust, and cannot be exercised for private purposes nor delegated to a street-railroad company. The statute contemplates that the corporate powers obtained by organization as a street-railroad company shall be for the purpose of constructing a street railroad in a particular city, and that the road, route, or system shall have a definite beginning and ending and a definite general route. When such a railroad is proposed, the legislature has, in effect, said to the city government:

"We delegate to you the power to consider this matter. If the proposed railroad, or any part of it, seems to you a matter of public convenience, and you can agree with such company as to the occupation of the streets over which it proposes to construct its railroad, you may do so, provided you do so by ordinance, and therein

express the terms and conditions upon which you grant the necessary street rights."

The ordinance under consideration widely departs from the power conferred upon the city by this statute. So far as it consented to the occupation of the streets included within the route described as beginning at the intersection of Main and Gay streets and terminating at the junction of Broad and Jackson, it is in conformity with the power, and valid. The remainder of the grant is in excess of the power of the city. The effort to add to that specific grant the power to occupy every other street within the city, and all which should at any time thereafter be laid out or extended, amounts to nothing more or less than a renunciation of the power of control over the entire streets of the city, and a delegation to the Knoxville Street-Railroad Company of the right to determine which of a medley of streets should be thereafter occupied by it for street-railroad purposes and the routes to be occupied by future extensions of the line actually designated by both charter and ordinance.

To say that the whole of the grant constitutes a route or system is absurd. The grant covers every street, and, if occupied, would result in a railroad upon the four sides of every city square. The city would be covered by a line of railroad having the system of a checkerboard, regardless of the public interest, and in defiance of the public necessity. No community would for a moment tolerate such an unnecessary and harmful obstruction of its streets, and no company could possibly contemplate such a multiplication of parallel lines, crossed at right angles at each cross street by another series of like parallel lines. The clear purpose of this ordinance was to enable the grantee to elect from time to time what streets it would occupy, and what new lines, or extensions of old ones, its interests as a private corporation would justify. To delegate this power to a street-railroad company is wholly inadmissible, violates every principle of public policy, and has no sanction in law. The provision of the statute which we have heretofore cited, providing that "no one of the streets of said city shall be used by said company * * * until the consent of the city authorities has been first obtained and an ordinance shall have been passed prescribing the terms on which the same may be done," is a clear implication that the city authorities shall know what streets the proposed railroad is to occupy, and intelligently determine whether the public interests will thereby be subserved.

This principle, that a municipal government may not delegate its power to determine which of the streets of the city may be occupied by such companies, was lately recognized and applied in a case where the delegation was of much less importance than that here involved. A city ordinance empowered a street-railroad company "to construct any and all necessary curves, sidings, crossovers, and switches that may be required for the proper, safe, and economical operation of the railway." The ordinance was held invalid, as delegating a discretion which the municipal government was itself bound to exercise. State of New Jersey v. Mayor,

etc., of Jersey City (Sup. Ct. N. J.; 1894) 30 Atl. 531. In the case of Railway Co. v. Jones, 34 Fed. 579, where the opinion was by Circuit Judge Caldwell, the same question arose upon an ordinance of the city of Pine Bluff, Ark., by which an exclusive right of way was granted to certain named persons for the purpose of constructing and operating a street railroad. The grant was of the right to occupy certain named streets, "and all other streets, within the present and future corporate limits of the city of Pine Bluff, as the parties of the second part think the public necessities require." The ordinance required, as in the case at bar, that a particular line over certain streets should be constructed within a limited time. After this line had been constructed, the city granted a right of way over other streets to Jones. The original grantees sought to enjoin the junior grantee, claiming that their right of way was exclusive, and embraced all the streets in the city. The claim was held invalid, the court holding that:

"The power and duty of determining when and on what streets the public convenience requires street railroads is devolved by law on the city council, and that body cannot refuse to discharge this duty, or devolve it on a street-car company, whose action would be controlled by its own, rather than the public, interest."

The conclusion we reach is that the complainant has no right to occupy the streets in controversy, to wit, Oak, Church, and Central avenue, and that the fragments of track put down upon them, under the circumstances stated heretofore, were unlawfully constructed, and are a nuisance, which the city may lawfully remove therefrom. The injunction was improvidently granted. The case will be remanded, with direction to discharge the injunction and dismiss the bill, with all costs.

On Petition for Rehearing.

(December 8, 1896.)

LURTON, Circuit Judge. These cases are again before us upon a petition to rehear certain points complained of by appellants, and upon an answer of the appellee filed by direction of the court. (1) The court failed to take notice of the fact that Central avenue and Crozier street are one and the same street, the name of Crozier street having been changed to Central avenue since the incorporation of the Knoxville Street-Railroad Company. This change of name does not affect the validity of the easement granted by the ordinance of January 11, 1876, in so far as that ordinance, by reference to the charter, granted a right of way over the disputed route, described in the charter as beginning at the intersection of Main and Gay streets, "and extending thence over said Gay street to Jackson; thence on and over the same to Broad street; thence on and over the same to the point of intersection with Crozier street; thence on and over Crozier to Vine street; thence on Vine to Gay; thence from same to Asylum; thence on same to Broad street; thence on same to its junction with Jackson street." (2) This correction involves a hearing upon certain other defenses which are now said to be applicable to a part of the right of way

on Central avenue between Broad street and Vine street. These defenses were originally made to all the streets upon which complainant claimed a right of way under the ordinance of 1876, which had not been actually occupied by his predecessors in the title prior to the repealing ordinance of 1895. It is urged now that a portion of the right of way on Central avenue between Broad and Vine, being that portion included in the right of way over the route definitely described, has not been actually occupied, and that, although the grant was originally valid, it has now no validity for several reasons, namely: (a) That the fragment of track laid south of Broad on Crozier, September 30, 1895, was laid for obstructive purposes only, and was not such a bona fide prior occupancy as should give it a prior right of occupancy; (b) that, whatever the rights of the Knoxville Street-Railroad Company originally, they have lost by nonuser or by specific and intentional abandonment; (c) that any such right of way has been terminated as to all unoccupied parts of the general route granted by the consolidation of 1889; (d) that the repealing ordinance of 1892 was valid as to any unoccupied part of said line; (e) that the conduct of complainant and his predecessors has been such as to estop him from claiming that any right of way now exists on unoccupied parts of said right of way.

These defenses were mentioned in our opinion, and their consideration reserved. Upon the assumption that Central avenue, as well as Church and Oak streets, were not included within the valid part of the ordinance granting a right of way to the Knoxville Street-Railroad Company, it became unnecessary to pass upon any other question than that arising upon the face of the ordinance of January 11, 1876. Holding that complainant had no street rights, under that ordinance, not included within the designated route sufficiently described by reference to the charter, we declined to consider any other question. These other defenses, in view of the correction now made, should be heard upon their merits, so far as they affect complainant's rights upon the unoccupied part of Central avenue between Broad and Vine streets. The appeal was from an interlocutory injunction. So far as the propriety of that injunction depended upon the validity of the ordinance of January 11, 1876, we were in possession of a complete record, and could do full and final justice by determining the matters of law upon which the street rights claimed under that grant depended. It now appearing that one of the unoccupied streets in controversy is claimed by complainant under the valid part of the ordinance of 1876, it becomes essential, before he shall be adjudged to now have a valid right to occupy that street, that each of the other defenses should be heard and disposed of upon its merits. The prima facie right of the complainant to occupy Central avenue between Broad and Vine streets is an ascertained right, resulting from the validity of the grant under which it is claimed. Whether or not that grant has been lost depends upon a great variety of facts, which can only fully appear after proof has been taken. No such abuse of discretion appears as would justify an entire dissolution of the temporary injunction granted pendente lite, and the record is not in

such a condition as to justify a final disposal of the questions of fact upon which the ultimate rights of the parties must depend. Thompson v. Nelson, 18 C. C. A. 137, 71 Fed. 339. What we have said as to any unoccupied portion of Central avenue applies equally to any unoccupied portion of any other street included within the valid general route. If there be any such unoccupied portion of such street, the defendants are at liberty to present any defense to a present claim of right of way thereon not inconsistent with the questions actually decided. We did not undertake to pass upon any question in respect of the validity or construction of the charter of the Citizens' Street-Railway Company, or upon the extent and validity of any ordinance under which it claims street rights. Neither did we, nor do we now, intimate any opinion touching any rights of way claimed by complainant under other ordinances, either to him or to any predecessor in title, or as to any rights of occupancy dependent upon limitation or matter of estoppel. All such questions are reserved until final hearing.

The reopening of the cases seems necessitated by the discovery of the identity of Central avenue and Crozier street, and by the fact that an insignificant portion of Central avenue is not under the actual occupancy of complainant. The former direction to dismiss complainant's bill must be retracted. The causes will be remanded, with directions to dissolve the injunction, except in so far as it operates to restrain defendants from interfering with any tracks or other equipment belonging to complainant, pending this litigation, upon any part of the right of way under the ordinance of 1876 held by this court to have been validly granted. The causes will be remanded for such further proceedings as may not be inconsistent with this opinion. Each party will pay its own costs of appeal. The costs below will abide the final decree.