CITY OF SHELBYVILLE, KY., v. GLOVER.

(Circuit Court of Appeals, Sixth Circuit.   December 6, 1910.)

No. 2,071.

1. RECEIVERS (§ 29*)—JURISDICTION—APPOINTMENT OF RECEIVERS.
    Where property of a corporation is situated in different federal districts of a state a federal court in one of the districts has jurisdiction to appoint a receiver for all of such property.
    [Ed. Note.—For other cases, see Receivers, Dec. Dig. § 29.*]

2. RECEIVERS (§ 73*)—REMEDIES IN RECEIVERSHIP PROCEEDING—PROTECTING POSSESSION OF PROPERTY.
    A proceeding by a receiver of a federal court to enjoin another from interfering with his possession of property, whether situated within the district or in another district of the same state, may properly be by petition in the suit in which he was appointed, although the proposed defendant is not a party to such suit, when his rights can be as fully protected in such proceeding as in a separate suit, which is a matter to be determined by the court in the exercise of its discretion.
    [Ed. Note.—For other cases, see Receivers, Cent. Dig. § 131; Dec. Dig. § 73.*
    Actions by and against receivers of federal courts, see note to J. I. Case Plow Works v. Finks, 26 C. C. A. 49.]

3. RECEIVERS (§ 73*)—REMEDIES IN RECEIVERSHIP SUIT—ANCILLARY PETITION.
    A receiver appointed by a federal court for an electric railway company completed the construction of a line under an order of the court and a grant from a fiscal court of a county of right of way to the company over a pike, to the limits of a city. He also purchased a lot and was proceeding to construct a station building thereon and also a Y on the pike when the city, which had extended its limits to include such terminus, denied him permission to construct such terminal facilities, and threatened to prevent such construction. Held, that the receiver, having undoubted possession of the lot, had also such joint possession of the street as gave the court jurisdiction to determine the rights of the parties to the controversy on a petition filed by the receiver in the original suit.
    [Ed. Note.—For other cases, see Receivers, Dec. Dig. § 73.*]

4. APPEAL AND ERROR (§ 954*)—REVIEW—DISCRETION OF LOWER COURT—ORDER GRANTING INJUNCTION.
    On an appeal from an order granting a preliminary injunction, the decision of the judge who made the order will not be reversed unless it appears, after a consideration of the grounds presented to him for his action, that his legal discretion to grant or withhold the order was improvidently exercised. If, however, it appears on appeal that the record is such as to forbid final relief it would be the duty of the court to at least reverse the order for injunction.
    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3818–3821; Dec. Dig. § 954.*]

5. RAILROADS (§ 93*)—RIGHTS IN USE OF HIGHWAYS—LEGISLATIVE GRANT.
    Section 768 (5) of the Kentucky Statutes (Russell's St. § 5368 [5]), which gives a railroad company power "to construct its road upon or across any * * * highway, street * * * and across any railroad or canal" relates to a complete crossing made necessary as part of a continuous road, and does not apply to a switch or Y extending merely from a track in a street to a lot adjoining the same.
    [Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 260–265; Dec. Dig. § 93.*]

6. FRANCHISES (§ 3*)—LEGISLATIVE GRANTS—CONSTRUCTION.

Legislative or municipal grants or franchises in which the public has an interest are to be strictly construed in favor of the public.

[Ed. Note.—For other cases, see Franchises, Dec. Dig. § 3.*]

7. RAILROADS (§ 79*) — RIGHTS IN USE OF HIGHWAYS — CONSTRUCTION OF GRANT—INCIDENTAL RIGHTS.

The fiscal court of a county in Kentucky granted to an electric railroad company right of way to construct its line on a pike to the limits of a city. *Held* that, whether such grant by implication included the right to build a Y at the city limits necessary to the company for the making of a terminal station at that point depended on whether the court in making the grant contemplated the reasonable possibility that such point would constitute the terminus of the road either permanently or temporarily, and that pending final determination of such question, in a suit, it was within the discretion of the court to grant a temporary injunction restraining interference with the construction and use of such Y.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 79.*]

8. APPEAL AND ERROR (§ 479*)—SUPERSEDEAS—DISCRETION OF COURT.

The granting or denying of a supersedeas, on an appeal from an order granting a preliminary injunction, is within the discretion of the court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2251–2256; Dec. Dig. § 479.*]

Appeal from the Circuit Court of the United States for the Western District of Kentucky.

Suit in equity by William Love against the Louisville & Eastern Railroad company. On petition by Henry Glover, receiver, against the City of Shelbyville, Ky. From an order granting a preliminary injunction, the city appeals. Affirmed.

J. B. Baskin and P. J. Beard, for appellant.
A. E. Richards, for appellee.

Before SEVERENS, WARRINGTON, and KNAPPEN, Circuit Judges.

KNAPPEN, Circuit Judge. This is an appeal from an interlocutory order granting an injunction restraining the city of Shelbyville from interfering with the receiver of the Louisville & Eastern Railroad Company in the construction by that officer of a depot abutting upon Main street in the city of Shelbyville on which the railway track was laid, and in the construction of a Y from the track to the depot lot. The important facts are these:

The Louisville & Eastern Railroad Company was organized under the laws of Kentucky for the purpose of building and operating an electric railway from Louisville to Lagrange, with branches to Shelbyville and other places. On April 3, 1906, the Shelby county fiscal court gave said railroad a franchise in the following terms:

"The Louisville & Eastern R. R. Co. is hereby granted a right of way over the Shelbyville & Louisville pike, beginning in the middle of said pike at the

---

western limits of the city of Shelbyville, Ky., thence running about west in the middle of said pike to a point opposite the western boundary of the yard of Mrs. Gordon Logan, thence W. on the north side of the said right of way of the Shelbyville & Louisville pike to the western boundary on the Agricultural & Mechanical Association Grounds. Said railroad not to obstruct the ditches or culverts along said pike. The part that is in the middle of the said pike shall conform to the present grade of the pike, the top of the rails not to extend above the metal of the pike next to them, and said track is to be laid as far from the center of pike as practicable, and to keep in repair and maintain road between tracks and three feet on either side thereof until they pass Mrs. Gordon Logan's residence, or the other end of her pavement."

A month later, and on May 3, 1906, the city of Shelbyville gave the railroad company a right of way over Main street (which was a continuation of the Shelbyville & Louisville pike), upon condition that the railroad company should reconstruct certain parts of Main street and should extend its line to Eminence, Ky., by August 1, 1908, under an agreement to pay the city $2,000 for each year of default in making that extension, and with provision for the reverting of the right of way to the city of Shelbyville in case the road was not constructed to and through that place by August 1, 1907. The railroad company partially constructed its line through Shelbyville, but never completed any part of it. The city accordingly repudiated the franchise and ordered the ties, rails, poles, etc., removed from the streets, and on August 8, 1907, began suit in equity in the Shelby county circuit court, asking that the right of way be adjudged to have reverted to the city, that the company be required to remove the material, construction, and equipment from the streets, and for injunction restraining further construction through Shelbyville. Meanwhile, in June, 1907, the city limits of Shelbyville had been extended westerly so as to take in about 1,637 feet of the pike, being that part included within the franchise previously granted by the Shelby county fiscal court, the pike so taken in thus becoming a part of Main street. The line to Eminence was never built. The company began the construction of its line from Beechwood to Shelbyville, but never finished it. On October 23, 1908, in a suit brought by William Love in the Circuit Court of the United States for the Western District of Kentucky, in equity, appellee was appointed receiver over the railroad company. He took the position that it was impracticable for his insolvent road to build and operate through Shelbyville under the conditions of the ordinance of 1906, and negotiations for a satisfactory modification of those terms having failed, on June 11, 1909, the court instructed the receiver to complete and equip the extension from Beechwood to the old limits of Shelbyville, and thus on the part of the pike over which the right of way had been granted by the Shelby county fiscal court, the validity of which grant has never been questioned. The order directing such extension is not in the record, but it seems to be assumed that it contemplated establishing the old western limits of Shelbyville as a terminus (at least temporary) of the Shelbyville extension, and that terminal requirements included a depot and a Y for the switching of cars. The receiver bought a lot adjoining Main street (on the south), near the old western limits of Shelbyville. His request for permission from the city to construct a depot was refused, and the

city having threatened to interfere with the building of the depot and Y, the receiver filed his petition in the original suit for an injunction against such interference. After the filing of said petition the city, on its own motion, discontinued its suit in the Shelby county circuit court for the cancellation of the city's franchise. The city's pleas to the jurisdiction of the court under the receiver's petition having been overruled, answer was filed accompanied by affidavits. Hearing on the motion for injunction was had upon the receiver's petition and the city's answer, and affidavits filed on both sides, no oral testimony being taken.

The jurisdiction of the court to entertain the receiver's petition for injunction is denied by plaintiff upon the ground that the controversy arising under the petition was an independent and adverse controversy between the receiver and the city, first, over the validity of the city's ordinance requiring the city's permission to erect the depot, and, second, over the right of the receiver to occupy the portion of the street proposed to be taken for the Y, the adverse possession of which portion the city claims to have had prior to the receivership; and that such adverse controversy cannot be tried except in a plenary suit. Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405, is relied upon as authority for this proposition. In our opinion the case before us is not ruled by considerations pertaining to the statutory proceeding in bankruptcy, and the case cited is not pertinent.

We think the objection under consideration was not properly raised in the court below. The plea which we understand to be relied upon for the purpose asserts—

"that the subject-matter of said petition lies in the county of Shelby and commonwealth of Kentucky, and is not situated in the jurisdiction of this court for the Western District of Kentucky; that this court had no jurisdiction, nor has it any jurisdiction, to appoint the said Henry Glover receiver, for the purpose and with directions to take possession of the subject-matter involved in said petition. Wherefore (the defendant) insisting upon its exemption from suit in this court, and upon its right to have the matter set forth in said petition adjudicated within the court having proper jurisdiction, it says that this court has not jurisdiction in the premises of this defendant."

That the defense we are considering was waived unless properly presented below is clear. Lake Shore & M. S. Ry. Co. v. Felton (6th circuit) 103 Fed. 227, 229, 43 C. C. A. 189. But assuming that the objection to the jurisdiction of the court is still open: There was jurisdiction in the original suit over the property in the Eastern District of Kentucky by virtue of a suit brought in the Western District of that State, in which part of the defendant's property was situated. Horn v. Pere Marquette Ry. Co. (C. C.) 151 Fed. 626, 631. The petition is a dependent proceeding, and depends for its jurisdiction (so far as the citizenship of parties is concerned) not upon the conditions requisite to an independent suit, but upon the jurisdiction of the case in which it is filed. A proceeding by a receiver to enjoin another from interfering with his possession of property may properly be by petition in the suit in which he was appointed, although the proposed defendant is not a party to such suit, when his rights can be

as fully protected in such proceeding as in a separate suit, which is a matter to be determined by the court in the exercise of its discretion. Lake Shore & M. S. Ry. Co. v. Felton, supra.

No reason was assigned below, so far as shown by the record, and none is suggested here, why the defendant's rights cannot be as well protected by a proceeding in the receivership suit as in a new and independent suit, nor under a dependent petition rather than a dependent bill. In our opinion the questions we are considering were not so far adverse, nor was the city's possession of the street not previously occupied by the Y so far of that nature, as to exclude the authority of the court to determine controversies respecting the right to use the street. As already said, the validity of the ordinance of the fiscal court, granting the right of way over the street, was not denied. The receiver was lawfully proceeding to construct the road thereunder, and in pursuance of the order of the court which appointed the receiver. Prior to the receivership no controversy existed either as to the right to build the Y or construct the depot. Those controversies arose simply in an attempt to construct the road under the interpretation placed by the receiver upon the grant. The subject-matter of the contract was merely the construction and interpretation of the grant under which the road itself (as distinguished from the Y) was being lawfully built. In our opinion the receiver had such concurrent possession of the street, growing out of his actual construction of the main track thereon, his lawful use of the street for that purpose, his claim of right to construct the Y, under his interpretation of the grant, and his proceeding to act thereunder by authority of the court, as to destroy the alleged sole and adverse occupancy by the city. The city claims no possession of the depot grounds. In our opinion the interpretation of the franchise in question was clearly within the jurisdiction of the court below.

The meritorious question is, Was the court's discretion properly exercised in granting the injunction? For the rule is that upon an appeal from an order granting a preliminary injunction the decision of the judge who made the order will not be reversed unless it appears, after a consideration of the grounds presented to him for his action, that his legal discretion to grant or withhold the order was improvidently exercised. Duplex Printing Press Co. v. Campbell Printing Press Co. (6th Cir.) 69 Fed. 250, 252, 16 C. C. A. 220; Bissell Carpet-Sweeper Co. v. Goshen Sweeper Co. (6th Cir.) 72 Fed. 545, 549, 19 C. C. A. 25; Thompson v. Nelson (6th Cir.) 71 Fed. 339, 341, 18 C. C. A. 137; Mayor, etc., of Knoxville v. Africa (6th Cir.) 77 Fed. 501, 505, 23 C. C. A. 252. If, however, it appears upon appeal that the record is such as to forbid final relief, it would be the duty of the court to at least reverse the order for injunction. Bissell Carpet-Sweeper Co. v. Goshen Sweeper Co., supra, at pages 545, 550, of 72 Fed., 19 C. C. A. 25; Mayor, etc., of Knoxville v. Africa, supra, at page 505, of 77 Fed., 23 C. C. A. 252. In such case there could be no room for the exercise of discretion in granting the writ.

The city insists that the railroad company has no authority under the grant of the fiscal court to construct the Y in question, but that

its right is merely to lay a single track in the street on the line described in the grant. It is conceded that the receiver has no greater right than the railroad company would have had. The receiver claims the right to construct the Y, first, under the authority of section 768 (5) of the Kentucky statutes (Russell's St. § 5368 [5]) which gives a railroad company power "to construct its road upon or across, any * * * highway, street * * * and across any railroad or canal." In the opinion of a majority of this court the section invoked relates to a complete crossing made necessary as part of a continuous road, and does not apply to a switch or Y extending merely from a track in a street to a lot adjoining the same. The receiver also insists that the right to build the Y is implied in the fiscal court grant, as a necessary incident to the enjoyment of the thing granted. The rule is well settled that legislative or municipal grants or franchises in which the public has an interest are to be strictly construed in favor of the public. Blair v. Chicago, 201 U. S. 400, 26 Sup. Ct. 427, 50 L. Ed. 801; Cleveland Electric Ry. Co. v. Cleveland, 204 U. S. 116, 27 Sup. Ct. 202, 51 L. Ed. 399; Knoxville Water Co. v. Knoxville, 200 U. S. 22, 26 Sup. Ct. 224, 50 L. Ed. 353; Central Trust Co. v. Municipal Traction Co. (C. C.) 169 Fed. 308; District of Columbia Com'rs v. B. & P. R. Co., 114 U. S. 453, 456, 457, 5 Sup. Ct. 1098, 29 L. Ed. 216; Illinois Central R. R. Co. v. Chicago, 176 U. S. 646, 665, 20 Sup. Ct. 509, 44 L. Ed. 622; Rapid Ry. Co. v. City of Mt. Clemens, 118 Mich. 133, 76 N. W. 318.

As to the specific question whether the right to construct the Y is necessarily implied in the fiscal court grant, as an essential incident of the authority to construct the road: In Nellis on Street Surface Railroads, at page 244, it is said:

"A street railroad company has the right to put down such appliances, in the way of turnouts and switches and side tracks, as are needful for the convenient use of its franchise. The only restriction upon the use of this right is that the use may not be negligent or unskillful, or without reasonable care therein."

In 3 Elliott on Railroads, § 1076, it is said:

"But it has been held that authority to construct and operate a railroad in a street includes the power to make a switch or turnout to a station on the street."

In New Orleans, etc., Co. v. Second Municipality of New Orleans, 1 La. Ann. 128, it was held that where the charter authorizes a railway along a public street to a particular point, the company will be allowed to make a turnout from the main track to communicate with a depot erected near the terminus of the road, where no objection exists to the construction of the turnout at that particular point. In Black v. Philadelphia, etc., R. R. Co., 58 Pa. 249, 252, it was held that in the authority to a railroad company to construct a railroad (which terminated on a navigable river) are included, by the force of the term, sidings, and branches to the company's wharves. In Wilkesbarre v. Railroad Co., 8 Kulp. (Pa.) 298, and in Wyoming v. Wilkesbarre, 8 Kulp. (Pa.) 113, it was held, in substance, that authority to lay tracks and operate a railroad upon the center of a designated

street carried with it the right to put down a switch and siding necessary for the accommodation of the public. In Romer v. St. Paul City Ry. Co., 75 Minn. 211, 217, 77 N. W. 825, 74 Am. St. Rep. 455, it was held that the grant in question, to construct and operate a railway, carried with it the right to use the connecting streets as reasonably necessary for taking cars in and out of the barn from the streets on each side of the barn. See, also, Wooley v. Railway Co., 83 N. Y. 121, 126.

The majority of this court is not satisfied to adopt the extreme view taken by some of the decisions just cited. But we are of opinion that if the fiscal court, in making the grant, contemplated the reasonable possibility that the eastern limits of its grant would constitute, either permanently or temporarily, the terminus of the Beechwood and Shelbyville extension, the grant would carry with it the right to such incidents as would be necessary to make the grant effective as a terminal grant, so long as it continued to be such. If, therefore, the fiscal court grant is susceptible of being construed as a terminal grant, we should not interfere with the discretion of the district judge in treating the Y as necessary to the enjoyment of the grant and in restraining the city's interference with its construction pending final hearing, especially since (as we understand to be the case) the depot and Y have been constructed under the protection of the injunction, and are now in use in connection with the operation of a public service road. The record before us is not such that we can say that the fiscal court, in making the grant, did not contemplate the reasonable possibility that either permanently or temporarily the eastern limit of the fiscal court grant might be the terminal. The grant of the fiscal court antedated that of the city of Shelbyville by a month, and the record does not show any connection between the grant of the fiscal court and that of the city. We must not be understood as holding, however, that if it shall be ultimately determined that the fiscal court grant was intended only as a link in a continuous grant, in other words, that it was dependent upon the building of the road through and beyond Shelbyville, the right to build the Y would be implied. That question is not now presented. The building ordinance of Shelbyville is plainly void, under the decision in Boyd v. Board of Council, 117 Ky. 199, 77 S. W. 669, as attempting to confer upon the city council arbitrary power to withhold a building permit; and the failure of the receiver to obtain such permission is therefore immaterial.

For the reasons we have stated, we cannot say that the district judge improvidently exercised his discretion in granting the injunction. It follows that we cannot review his action in refusing a supersedeas on appeal. Such relief is not of right, the granting or withholding of supersedeas being within the discretion of the court. In re Haberman Mfg. Co., 147 U. S. 525, 530, 13 Sup. Ct. 527, 37 L. Ed. 266; Bissell Carpet-Sweeper Co. v. Goshen Sweeper Co., supra, at pages 545, 548 of 72 Fed., 19 C. C. A. 25. And if it was proper to allow the injunction, it is by no means apparent that the court abused its discretion in denying the supersedeas, in view of the public nature of the railway and the fact that the inconvenience from withholding it

during the pendency of the suit may, in the judgment of the court below, have well been thought to outweigh that from granting it.

The order appealed from will be affirmed.

NOTE.—The following is the opinion of Evans, District Judge, in the court below:

EVANS, District Judge.   Certain liens on the property of the Louisville & Eastern Railroad Company are sought to be enforced in this action, and soon after its institution a receiver was appointed with the usual powers. Subsequently, at the request of nearly or quite all of the lien creditors of the railroad, the receiver was authorized to issue certificates, which were given a first lien upon certain of the company's property.   Such certificates to the amount of $350,000 were issued and sold, and with the proceeds the receiver was directed to complete the construction of the railroad from Beechwood, in Jefferson county, to the old city limits of the city of Shelbyville, in Shelby county.   This direction to the receiver involved the completion to Shelbyville of what is known as the Shelbyville Branch of the defendant railroad. The main line of the railroad extended from the city of Louisville, by way of Anchorage, Pewee Valley, and other places, to Lagrange, in Oldham county, and had been in operation for some years before the receiver was appointed.   The attempt to construct a branch railroad to Shelbyville and beyond was the main cause of the collapse of the railroad company.   That branch left the main line at Beechwood, and when completed to Shelbyville will itself be some 22 miles long.   Much work on the branch had been done before this suit was brought, but all of it had been done between Beechwood and the city of Shelbyville, in which city also considerable work had been done by the company.

Antecedent to this the fiscal court of Shelby county, in April, 1906, had granted the necessary permission for the construction of the railroad up to the then city limits of Shelbyville.   Its action in the premises was embraced in an order expressed as follows: "The Louisville & Eastern Railroad Company is hereby granted a right of way over the Shelbyville & Louisville pike, beginning in the middle of said pike at the western limits of the city of Shelbyville, Ky., then running about west in the middle of said pike to a point opposite the western boundary of the yard of Mrs. Gordon Logan, thence west on the north side of the said right of way of the Shelbyville & Louisville pike to the western boundary of the Agricultural & Mechanical Association grounds.   Said railroad not to obstruct the ditches or culverts along said pike.   The part that is in the middle of said pike shall conform to the present grade of the pike, the top of the rails not to extend above the metal of the pike next to them, and said track is to be laid as far from the center of pike as practicable, and to keep in repair and maintain road between tracks and three feet on either side thereof until they pass Mrs. Gordon Logan's residence, or the end of her pavement."

In June, 1907, the city of Shelbyville extended its limits and took into the city certain adjacent territory, embracing that described in the foregoing order.   For several months the effort to complete the work of the branch to Shelbyville has been prosecuted by the receiver, and large sums of money have been expended thereon.   It is very desirable that the station for the company's use at Shelbyville should be located in the central and business section of the city, but the latter has refused and still refuses to grant the necessary permission.   When the work on the branch approached completion, the city manifested opposition to its coming into the city at all; and when, upon the continued refusal of permission to that end, the receiver began preparation for the erection upon property owned by the company of a station under the grant given by the county previous to the extension of the city limits, the city, in order to prevent this, threatened the enforcement of its building ordinance, thus, while refusing permission for the road to be extended further into the city, endeavoring to prevent the receiver from erecting a station on the company's property outside of the old city limits.   It is this situation which caused the filing of the petition by the receiver, in which

184 F.—16

he prays that the city may be enjoined from interfering with the erection of the station.

Some time previous to the financial collapse of the railroad company the city had made an agreement with it. whereby the city granted the company the use of Main street upon certain conditions, among them that the railroad company should keep the street in repair. and that it would pay the city liquidated damages to the extent of $2,000 for each and every year which should elapse before the railroad company completed and put into operation the branch to Eminence, some 12 miles or more beyond Shelbyville. Before its insolvency the company did much work on Main street, and laid its track therein, which, however, the city has covered up. The creditors, for whose benefit alone this suit is pending, and whose claims will entirely exhaust the company's property, have no interest in the extension of the branch beyond Shelbyville. Their interest in that part of the branch between Beechwood and Shelbyville arose out of the fact that the company had done so much work thereon. There is no one to supply the money for the purpose of extending the branch on to Eminence. It is estimated that it will take at least $350,000 to do that.

Previous to the institution of this action the city had filed a suit in the Shelby circuit court, and in its petition therein had shown that what we have called an agreement between the railroad company and the city took the form of an ordinance adopted May 3, 1906, by the city at the request of the railroad company. The ninth section of that ordinance was as follows: "If the Louisville & Eastern Railroad Company fails to begin work on its said road in the city of Shelbyville, in good faith, for six months, or fails to construct its roadbed on said Main street, in the city of Shelbyville, for twelve months from the date on which it commences the construction of its roadbed on Main street, and also if it fails to construct its said road to and through the city of Shelbyville, as in this contract provided, by the 1st day of August, 1907, then its right of way herein granted shall revert to the city of Shelbyville; and if the Louisville & Eastern Railroad Company fails to begin work on its road from Shelbyville, Kentucky, to Eminence, Kentucky, in six months after said road has begun operation through the city of Shelbyville, on Main street, or fails to complete same to Eminence, Kentucky, by August 1, 1908, then said company agrees to pay the city of Shelbyville, as liquidated damages, the sum of $2,000 per year, until said road is completed to Eminence, Kentucky, and said amount shall be a lien on the property of said company; but it is understood and agreed that if said road is begun in good faith, and it is delayed by proceedings in court or other unavoidable delays, and said company is using reasonable diligence to complete said road, the board of council of the city of Shelbyville will grant it a reasonable extension of time, not exceeding altogether twelve months."

The city had also alleged in its petition that the railroad company had not, by August 1, 1907, constructed its railroad to Shelbyville, and "that the defendant by failing to construct its road on Seventh street has not accepted the provisions of said ordinance; that defendant, by failing to construct its road on Main street through Shelbyville by the 1st day of August, 1907, has not accepted the provisions of said ordinance; the defendant, by failing to construct its road to Shelbyville by the 1st day of August, 1907, has not accepted the provisions of said ordinance; and for each of said reasons the plaintiff is discharged from the provisions of said ordinance, and the right of way through said Main street and Seventh street has reverted to the city of Shelbyville. The plaintiff states that there was and is no consideration for said ordinance or the acceptance thereof as aforesaid. It states that said ordinance and the aforesaid written acceptance thereof did not and does not contain any mutual agreement or binding agreements between the parties thereto. It states that there is not in same any obligations upon the part of the defendant to construct said road either to or through Shelbyville, and by the terms of said ordinance and said written acceptance it was left to the defendant to choose whether it would proceed to construct said road either to or through Shelbyville, or to abandon the construction thereof, and there was and is no mutuality in said contract, and same was and is a unilateral executory contract, and a nudum pactum and unenforceable by ei-

ther party hereto, and same was and is only an option without consideration offered to the defendant, by which it might choose to construct or to abandon the construction of said road, and the defendant has not accepted said option by the construction of said road as provided in said contract, and as hereinbefore set out, and said option has expired by the terms contained therein and expressly agreed to by the parties hereto.    The plaintiff states that on August 3, 1907, it gave the defendant notice to remove its ties and rails, poles, and equipment heretofore placed by it on Main street from of and on Main street and to restore the said street to the condition in which same was in on July 1, 1907, the day before it commenced the construction of its said road on Main street; but the defendant fails and refuses to do so, and has now rails and ties and poles partly on Main street, and same constitute an obstruction to public travel on said street, all of which is unlawful and wrongful and without authority of law, and same constitutes and is a trespass upon the streets of the city and against the rights of the city."

And the city in its petition prayed as follows, namely: "That it be adjudged that the defendant has no right of way upon the streets of Shelbyville, and that the same as set out in said ordinance has reverted to the city of Shelbyville; that the defendant be required forthwith to remove from and off of the streets of Shelbyville all poles, ties, and rails or other equipment placed by it upon said streets, and that it be required to restore said streets to the condition same were in on the day before it commenced to construct its road on said Main street, and that in doing so that it be required to remove said its ties, and rails, poles, and equipment from one square at a time, and to restore said street as aforesaid, before removing said ties, rails, poles, and equipment from another square, so as to impede the public travel as little as possible while removing same, and while restoring said street, and that the defendant be restrained and enjoined from further proceeding to construct said road through the city of Shelbyville, or upon any of the streets thereof, and from operating any trolley wires or cars through or in the city of Shelbyville, for its cost, and for all proper and equitable relief."

The receiver appeared in that case very soon after his appointment, and, for reasons stated in a paper then filed, asked for a delay, and expressed the hope that something might be done in a very short time to adjust the difficulty; but in this paper the receiver in no way adopted the contract nor agreed to undertake its performance.    Soon afterwards the city dismissed its suit, but has refused all offers of the receiver for leave to go into the city beyond the old boundary.    The court has never authorized the receiver to undertake to perform the agreement between the city and the railroad company, nor has the receiver ever agreed to perform the same.    There is no way known by which he can do so without the direction of the court, which, of course, could not properly be given without the consent of the creditors of the railroad company, as it would further burden the property.    It may be added that this suit is nearly ready for a final decree.    Such decree waits almost entirely upon the completion of the road to Shelbyville.    It is not at all likely that such a decree will deal with anything but the completed road and all its equipment, and after a sale thereunder the purchaser will not have the slightest interest in the contract with Shelbyville, and the railroad company itself obviously will be entirely unable to comply with its terms.    Literal enforcement of the terms of that agreement would not only impose upon the defendant railroad company the duty of keeping the streets in repair, but would also impose upon it a burden of $2,000 a year until the branch was completed to Eminence.    Such completion would seem to be extremely improbable within any definite or ascertainable time.    Those questions, however, would not affect the purchaser, but only the present insolvent railroad company.

It was objected at the outset that the court has not jurisdiction of this particular phase of this case, because Shelbyville is in the Eastern district, and not in this; but the court overruled the objection upon the authority of Horn v. Pere Marquette Railroad (C. C.) 151 Fed. 631.  See, also, Lake Shore Ry. Co. v. Felton, 103 Fed. 227, 43 C. C. A. 189.

We shall not go into details in passing upon the motion for a temporary injunction pendente lite, but after an attentive consideration of the facts shown by the record we have concluded:

(1) That the pending questions can in no proper way be made to depend upon the unexecuted agreement between the railroad and the city of Shelbyville; that contract not having been accepted by the court nor by the receiver with its authority, and it being a matter with which the lienholders have no concern. United States Trust Co. v. Wabash, etc., R. R. Co., 150 U. S. 287, 4 Sup. Ct. 86, 37 L. Ed. 1085, and case cited.

(2) That the order of the court directing the receiver to complete the branch road from Beechwood to the old western limits of the city of Shelbyville covers and embraces as an appropriate and necessary incident the erection of such stations, depots, switches, etc., as are essential to putting the railroad in condition for effective operation.

(3) That under section 768 of the Kentucky Statutes (section 5388, Russell's St.) the receiver, in carrying out the orders of the court, has the right with its track to cross Main street extended (formerly the Louisville & Shelbyville turnpike road) in order to reach the lot owned by the company on the other side of that street and on which it proposes to erect its station. Under a proper construction of the Kentucky Statutes this results, notwithstanding anything said in the very different case of Edmunds v. Baltimore & Potomac R. R. Co., 114 U. S. 453, 5 Sup. Ct. 1098, 29 L. Ed. 216.

(4) That the building ordinance of the city of Shelbyville under which that city is seeking to prevent the receiver from doing this is void. Boyd v. Board of Councilmen, 117 Ky. 199, 77 S. W. 669, 111 Am. St. Rep. 240, State v. Tenant, 110 N. C. 609, 14 S. E. 387, 15 L. R. A. 423, 28 Am. St. Rep. 715, Tilford v. Belknap, 126 Ky. 247, 103 S. W. 289, 11 L. R. A. (N. S.) 708, and Diebold v. Ky. Traction Co., 117 Ky. 146, 77 S. W. 674, 63 L. R. A. 637, 111 Am. St. Rep. 230, the latter of which cases establishes the proposition that this railroad is a "trunk line" within the meaning of the law.

(5) That when the city of Shelbyville filed its suit in the Shelby circuit court, in which it made the claims and assertions set out above, and thereupon sought the judgment prayed for propositions were asserted which seem to be sound and maintainable, and which are none the less so because the city voluntarily dismissed its action. Furthermore, it may be that the city thus made an election from which it cannot recede.

(6) That the fact that the city prefers that the station shall be erected nearer the center of the city and its business can be given no force in the decision of the pending motion, because the city declines to aid in bringing about that location of the building by refusing, instead of granting, the necessary consent whereby the receiver can lawfully use the streets of the city in order to get to the point where the city now says it desires a station to be built. If the city will give the necessary consent, the court will gladly authorize and direct its receiver to construct and maintain a station at the place desired by the city, instead of the one so much further out, and which location is made necessary by the act of the city alone.

(7) There is urgent need for the erection of a station somewhere in or near Shelbyville. Those who are in any way interested in the subject, as well as the court and its receiver, prefer that the station shall be near the center of the city and at the point where the latter says it prefers it to be located; but, failing to get it there, because of the refusal of the city to grant the right to use its streets, the station will have to be erected where the right to do so is clear, even if we have ultimately to go entirely outside the city limits. However, the last alternative is not important now, as previous to the extension of the city limits the state and the fiscal court of Shelby county, under the state's authority, granted all the rights necessary for the location and erection of the station at the place where the receiver proposes to build it, and we think the extension of the city limits did not destroy the right previously granted. The city took in the new territory, subject to the right already acquired by the railroad company.

(8) There does not appear to be any law which forbids the erection and maintenance of two stations in Shelbyville. The erection of one in the center of the city would probably be all that would be necessary; but as the right to do that is not given by the city, the court and its receiver are restricted to a course which locates the station at a point which may be quite inconvenient

alike to the receiver's business and to the patrons of the road. For that result we are not responsible. We cannot help ourselves.

(9) The objection that it would be a nuisance to the neighborhood in the outskirts of the city to erect a station, by reason of bad smells which might result and from the noise of crowds which might assemble, is by no means impressive in view of the use of stations in every town or city where a railroad runs, and it may well be supposed that those conditions, if they arose at all (which is improbable), would be much emphasized in the more central and busy part of the city, and at the point where the city professes to want the station located.

Regretting that the action of the city leaves no alternative but to construct the station where the receiver proposes to do so, upon property owned by the company, for the reasons stated, the motion for a temporary injunction pendente lite will be sustained.